# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 21-1769-VAC-JLH |
| | ) | (CONSOLIDATED) |
| v. | ) | |
| | ) | |
| VECTOR FLOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-203-VAC-JLH |
| | ) | |
| v. | ) | |
| | ) | |
| AJAY JAIN, VIKRANT GHAI, AND | ) | |
| SHAILENDRA SHARMA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF HID GLOBAL CORPORATION'S OBJECTIONS AND RESPONSES TO
DEFENDANTS' FIRST SET OF INTERROGATORIES (NO. 1)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff HID Global Corporation

("Plaintiff" or "HID"), through its undersigned counsel, hereby responds to Defendants Vector

Flow Inc., Ajay Jain, Vikrant Ghai, and Shailendra Sharma's ("Defendants") First Set of

Interrogatories (No. 1).

Pursuant to Federal Rule of Civil Procedure 26, HID reserves the right to supplement its

Responses to these Interrogatories if it learns of additional responsive information.

6.      HID objects to the definition of "Thing(s)" as vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of the case, including to the extent it purports to require HID to disclose identifying information beyond what is required by the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware, or purports to require information that is not within HID's possession, custody or control.

7.      HID objects to Instructions 1-7 to the extent they seek information protected by attorney-client privilege, the work product doctrine, the common interest privilege, or any other applicable privilege or immunity doctrines.  HID further objects to Instructions 2-7 to the extent they seek to impose obligations beyond the scope of Rule 33 of the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, or any Order entered by the Court in this action.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe specifically each and every Trade Secret that You contend Vector Flow or any of the Individual Defendants misappropriated.

**RESPONSE TO INTERROGATORY NO. 1:**

HID incorporates by reference all of its General Objections as if fully set forth herein.  HID objects to this Interrogatory to the extent it seeks the production of documents or information that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  HID also objects to this Interrogatory on the grounds that it is premature given that fact discovery in this case has just started and that expert discovery has not yet begun.  HID's investigation of facts and discovery of information and documents relating to its causes of action are continuing.  HID reserves the right to supplement and/or amend

███████████████████████████████

its response as fact discovery progresses and will provide its expert disclosures in accordance with the expert discovery deadlines established by the Court.

Subject to and without waiving any of their general and specific objections, HID preliminarily responds as follows:

The HID trade secrets misappropriated by Defendants comprise the HID SAFE™ source code as it existed before ████████. That source code includes the following modules ██████████████████████████████████████████████████████████████. That source code also includes source code implementing the ████████████████████████.

The misappropriated HID SAFE™ source code also includes ████████ that implement HID SAFE™ functionality.

The misappropriated HID SAFE™ source code comprises all versions/branches of that source code through ████, including all prior versions and the ████████████. The misappropriated HID SAFE™ source code also includes versions of the source code customized for specific customers and/or projects.

Discovery is ongoing, and HID reserves the right to supplement or amend this Response.

███████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Matthew S. Middleton (#6877)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
mmiddleton@morrisnichols.com

OF COUNSEL:

Marc J. Pensabene
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

David R. Eberhart
Sorin G. Zaharia
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

Eric Amdursky
Patrick Nack-Lehman
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
(650) 473-2600

June 6, 2022

*Attorneys for Plaintiff HID Global Corporation*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1769 (VAC) (JLH) |
| | ) | (CONSOLIDATED) |
| VECTOR FLOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-203 (VAC) (JLH) |
| | ) | |
| JAIN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF HID GLOBAL CORPORATION'S OBJECTIONS AND RESPONSES TO
DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-92)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff HID Global Corporation ("Plaintiff" or "HID"), through its undersigned counsel, hereby responds to Defendants Vector Flow Inc., Ajay Jain, Vikrant Ghai, and Shailendra Sharma's ("Defendants") First Set of Requests for Production (Nos. 1-92).

Pursuant to Federal Rule of Civil Procedure 26, HID reserves the right to supplement its Responses to these Requests if it learns of additional responsive information.

**GENERAL OBJECTIONS AND STATEMENTS**

HID makes the following general responses and objections to each definition, instruction, and Request propounded in Defendants' First Request for Production. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or

the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege or immunity.

Subject to and without waiver of the foregoing General and specific objections, HID responds that, after conducting a reasonable search, no such nonprivileged, responsive documents exist. HID reserves the right to supplement, modify, correct errors in, or otherwise amend this Response.

**Request for Production No. 20.**    All documents related to any disclosure to any third party, whether intentional or inadvertent, of any trade secret You allege was misappropriated by Vector Flow or the Individual Defendants.

**<u>RESPONSE TO REQUEST NO. 20:</u>**

In addition to the foregoing General Objections, HID specifically objects to this Request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents." HID further objects to this Request to the extent that it seeks information that is not in the possession, custody, or control of HID. HID further objects to this Request to the extent it calls for a legal conclusion or expert analysis.

Subject to and without waiver of the foregoing General and specific objections, HID responds that, after conducting a reasonable search, no such nonprivileged, responsive documents exist. HID reserves the right to supplement, modify, correct errors in, or otherwise amend this Response.

**Request for Production No. 21.**    All documents and things related to any alleged misappropriation of HID's trade secrets by Ajay Jain, Vikrant Ghai, or Shailendra Sharma, including but not limited to server logs, device access logs, building entry logs, or any other form of documentary, physical, or electronic record that You believe evidences unauthorized access, misappropriation, or exfiltration of HID's trade secret information by the Individual Defendants.

**RESPONSE TO REQUEST NO. 21:**

In addition to the foregoing General Objections, HID specifically objects to this Request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents and things." HID further objects to this Request as vague and ambiguous with respect to the term "related to." HID objects to this Request to the extent that it seeks a legal conclusion. HID further objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege or immunity.

Subject to and without waiver of the foregoing General and specific objections, HID is willing to meet and confer regarding the production of access logs. HID responds that, after conducting a reasonable search, no such nonprivileged, responsive documents exist related to the remaining aspects of this Request. HID reserves the right to supplement, modify, correct errors in, or otherwise amend this Response.

**Request for Production No. 22.**     All documents and things that expressly identify the HID SAFE™ Source Code, or any component thereof, as a trade secret of HID.

**RESPONSE TO REQUEST NO. 22:**

In addition to the foregoing General Objections, HID specifically objects to this Request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents and things" and to the extent it purports to seek information related to all versions of the HID SAFE™ product. HID further objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege or immunity. HID further objects to this Request to the extent it calls for a legal conclusion or expert analysis.

16

Subject to and without waiver of the foregoing General and specific objections, HID will produce nonprivileged, responsive documents, to the extent such documents exist, that are within HID's possession, custody, or control, and can be located through a reasonable search.

**Request for Production No. 78.** All documents relating to any analysis, assessment, evaluation, or investigation performed by You or any third party as to whether Vector Flow or the Individual Defendants misappropriated any of Your trade secrets.

**RESPONSE TO REQUEST NO. 78:**

In addition to the foregoing General Objections, HID specifically objects to this Request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents." HID further objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege or immunity. HID further objects to this Request to the extent that it seeks information that is not in the possession, custody, or control of HID. HID further objects to this Request to the extent it calls for a legal conclusion or expert analysis.

Subject to and without waiver of the foregoing General and specific objections, HID responds that, after conducting a reasonable search, no such nonprivileged, responsive documents exist. HID reserves the right to supplement, modify, correct errors in, or otherwise amend this Response.

**Request for Production No. 79.** All documents relating to any analysis, assessment, evaluation, or investigation performed by You or any third party as to whether Vector Flow infringes any of the Asserted Patents.

**RESPONSE TO REQUEST NO. 79:**

In addition to the foregoing General Objections, HID specifically objects to this Request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents." HID further

that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege or immunity.

Subject to and without waiver of the foregoing General and specific objections, HID will produce nonprivileged, responsive documents, to the extent such documents exist, that are within HID's possession, custody, or control, and can be located through a reasonable search.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

_____

Jack B. Blumenfeld (#1014)

Calvin M. Brien
Natalie A. Bennett
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
 Washington, DC 20004-2541
(202) 739-3000

Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Scott D. Sherwin
Jason C. White
James J. Kritsas
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
(312) 324-1000

*Attorneys for Plaintiff HID Global Corporation*

Michelle Pector
Veronica J. Lew
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX  77002-5006
(713) 890-5000

Michael D. Weil
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
(415) 442-1000

August 26, 2022

# EXHIBIT C

# Morgan Lewis

**Natalie A. Bennett**
Partner
+1.202.739.5559
natalie.bennett@morganlewis.com

September 23, 2022

BY E-MAIL

David Murdter
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
dmurdter@cooley.com

Re:  *HID Global Corp. v. Vector Flow, Inc. et al., Case No. 1:21-cv-01769-VAC-JLH et al. (D. Del.)*

Dear David,

We are in receipt of your correspondence dated September 21, 2022 following the parties' meet and confer discussion on September 19, 2022.  I first want to express the seriousness with which HID and Morgan Lewis take the process of trying to resolve disputes.  Your correspondence was concerning in that it did not seem to accurately capture the actual positions exchanged during the September 19th call.  The accusatory tone both misstates HID's positions and reads as if the correspondence was prepared with the goal of advancing discovery disputes rather than resolving them.  HID's goal is to efficiently progress through discovery without spending time and resources on unhelpful posturing.

Below please find HID's further updates from the call earlier this week and a recitation of HID's positions on affirmative and responsive discovery requests.

### I.   HID's Pending Discovery Requests of Defendants

- ███ **Tickets and Source Code Files.**  Your correspondence fails to adequately address the discovery requests raised in HID's correspondence dated August 29, 2022 and September 12, 2022.  In those letters we explained in detail the bases for these affirmative technical discovery requests, including how the specific requests are tied to the HID source code consultant's review of the Vector Flow source code.  Although you indicate that you are investigating ███ tickets, there is no mention of any follow-up relating to HID's request for the identified source code repositories/files.  *Please confirm by Tuesday September 27* whether Vector Flow will be producing the requested (1) ███ tickets or repositories, (2) discovery, including the missing source code repositories in which Vector Flow and Innominds appear to have collaborated, and (3) documentary discovery related to former

**Morgan, Lewis & Bockius** LLP

1111 Pennsylvania Avenue, NW
Washington, DC 20004
United States

☎ +1.202.739.3000
🖷 +1.202.739.3001

Bennett to Murdter
September 23, 2022
Page 2

HID employees who authored Vector Flow's source code. All three requests are fully articulated in the above-referenced correspondence.

- **Operational Software Request.** During the meet and confer earlier this week we did not get a chance to discuss Vector Flow's willingness to produce operational software for the Accused Products. These topics were also raised in the correspondence dated August 29, 2022 and September 12, 2022. Please let us know when we can expect production of the operational software. Alternatively, we are available to meet and confer on this request on Tuesday, September 27 at 3pm ET.

- **Defendants' Supplementation of Written Discovery.** We acknowledge that Vector Flow has agreed to supplement its response to HID's Interrogatory No. 2, and the Individual Defendants agreed to supplement their responses to HID's Interrogatories Nos. 6, 8, and 9. The Defendants requested 21 days to make these supplementations. Although that timeframe is longer than what HID was anticipating, in the spirit of cooperation and with the expectation that such courtesies will be reciprocated in the future, HID consents to Vector Flow serving the updated responses 21 days from September 19, which will be October 10. Moreover, given the extended timeframe, HID reiterates its request that the responses reflect Defendants' meaningful effort to fully respond to the interrogatories posed.

## II. HID's Responses Regarding Defendants' Pending Discovery Requests of HID

- **Supplementation of HID Written Discovery.** Consistent with our discussion, HID will supplement its responses to Defendants' Interrogatories Nos. 4, 7, and 11. HID also plans to supplement its responses to Defendants' Requests for Production Nos. 21 and 36. That supplementation should take place within the next ten days.

- **Review of HID SAFE Source Code.** We wrote to Cooley on September 14, 2022 indicating that the HID SAFE source code has been available for inspection since Monday, September 12 at the Morgan Lewis Palo Alto office (the location Defendants indicated was most convenient). That communication also indicated that the source code available for review is for versions 3, 4, and 5 of HID's SAFE software.

  Our understanding is that Defendants' have not yet initiated review of the available source code. There seems to be a misunderstanding regarding our discussion of the source code available for review so we hope to clarify any misunderstanding. As you and your clients are aware, the HID SAFE source code was originally developed at Quantum Secure and migrated to HID upon its acquisition of Quantum Secure in 2015. It is HID's contention, as stated in the Complaint, that Vector Flow and the Individual Defendants improperly retained access to the HID SAFE source code after founding Vector Flow around 2018 or otherwise accessed the SAFE source code through improper means during that same time period.

  Consistent with our prior communication over email, versions 3, 4, 5 of the HID SAFE source code are available for review. As you and your clients are aware, version 3 was operational from approximately 2006 to 2010 before Quantum Secure migrated to version 4. A complete copy of version 3 is available for the source code consultant to review yet, as you are likely aware, that version was █████████████████████████████████.

Bennett to Murdter
September 23, 2022
Page 3

As you also are likely familiar with, around the time Vector Flow was founded, version 4 was the operational version of HID SAFE source code with version 5 being rolled out thereafter. Full copies of both versions 4 and versions 5 of the HID SAFE source code are available for review and these versions are immediately relevant for any experts or consultants to review to understand the facts surrounding unauthorized access of the source code and subsequent misuse when developing Vector Flow products.

In sum, there was no remarkable admission made during our prior discussion and there is certainly no reason that Defendants cannot proceed to review the HID SAFE source code which is highly relevant evidence to the allegations set forth in the Complaint.

- **Contention Interrogatories for Trade Secret Misappropriation Claims.** Contrary to the characterizations in your correspondence, HID is not refusing to provide further detail as to the nature of the misappropriated trade secrets. HID has already provided the basis for the trade secret misappropriation allegations in its response to Interrogatory No. 1: Vector Flow and the Individual Defendants misappropriated the HID SAFE source code to incorporate HID's intellectual property into Vector Flow's product offerings, including customized features for specific customers and/or projects.

  As I explained during our meet and confer, the specific means by which the misappropriation of the HID SAFE source code occurred remains the subject of HID's ongoing investigation. The sequencing of further disclosure by HID was previously raised to the Court and the Court found that HID had made out its trade secrets case with sufficient particularity such that discovery should proceed. HID is diligently comparing the Vector Flow and HID SAFE source code and awaits production of the source code repositories/files referenced earlier in this letter as well as discovery sought from third parties in four pending subpoenas. HID is not refusing to further supplement its interrogatory responses as further discovery is made available but, at this time, HID is still investigating the specific acts and actors that misappropriated the HID SAFE source code. As further information from both Defendants and third parties is made available, HID will diligently supplement the contention interrogatories for the trade secret misappropriation claims.

- **Claim Charts Comparing the HID SAFE source code to the Asserted Claims.** HID maintains the objections stated in my September 7, 2022 correspondence as to relevance, overbreadth, burden, and the lack of proportionality for the requested claim charts in Defendants' Interrogatory No. 13.

- **HID Access Logs.** As we discussed, HID has access logs from October 2020 onward and is in the process of collecting those access logs for production.

## III. Search Terms Applicable to Custodial Files

As previously proposed, we agree to move forward with a protocol to apply search terms across custodial data. We are working on a proposal to this end that should be available for Vector Flow's consideration next week. We can set aside time to confer further on this issue either on September 27 at 3pm ET as previously offered or another mutually convenient time later in the week but we are not available on Wednesday, September 28 and have only limited availability Thursday, September 29 or Friday, September 30.

Bennett to Murdter
September 23, 2022
Page 4

Sincerely,

Natalie A. Bennett

Natalie A. Bennett

Cc: All counsel of record

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HID GLOBAL CORPORATION,      )
                             )
              Plaintiff,     )     C.A. No. 21-1769 (VAC) (JLH)
                             )     (CONSOLIDATED)
        v.                   )
                             )     ███████████████████████
VECTOR FLOW, INC.,           )
                             )
              Defendant.     )

**PLAINTIFF HID GLOBAL CORPORATION'S OBJECTIONS AND RESPONSES TO
DEFENDANTS' SECOND SET OF INTERROGATORIES (NOS. 2-17)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff HID Global Corporation ("Plaintiff" or "HID"), through its undersigned counsel, hereby responds to Defendants Vector Flow Inc. ("Vector Flow"), Ajay Jain, Vikrant Ghai, and Shailendra Sharma's ("Individual Defendants" and together with Vector Flow, "Defendants") Second Set of Interrogatories (Nos. 2-17).

Pursuant to Federal Rule of Civil Procedure 26, HID reserves the right to supplement its Responses to these Interrogatories if it learns of additional responsive information.

**GENERAL RESPONSES**

1.      HID's Responses to Defendants' Second Set of Interrogatories are made to the best of HID's present knowledge, information, and belief.  These Responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of HID's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from HID's further discovery or investigation.

- 1 -

Inc. admitted, for example, in a December 6, 2012 press release, that the '704 Patent was "the basis of key elements of [Quantum Secure's] SAFE platform" and "integral to the company." *See, e.g.*, https://web.archive.org/web/20140224015942/http://www.quantumsecure.com:80/quantum-secure-reports-approval-of-patent-on-core-technologies/.

With knowledge of the Asserted Patents, Vector Flow has engaged in making, using, selling, and offering to sell the Accused Products that Vector Flow knew or should have known infringe the Asserted Patents.

HID also incorporates by reference its infringement contentions served on Vector Flow on August 1, 2022, in accordance with the Court's Scheduling Order, and any amendments or supplements thereto.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e). HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 4:**

Describe in detail Your computation of each category of damages You allege should be awarded to HID including all legal and factual bases thereof.

**RESPONSE TO INTERROGATORY NO. 4:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID further objects to this Interrogatory because it prematurely seeks information about computation of damages before HID has had the opportunity to conduct full discovery. HID further objects to this Interrogatory because it prematurely seeks information that will be the subject of expert discovery. Such information will be disclosed according to the deadlines set by the Court's Scheduling Order. HID further objects to this request as vague and ambiguous based on the phrase "each category of damages." HID objects to this Interrogatory to the extent it seeks

information protected by attorney-client privilege, the work product doctrine, the common interest privilege, or any other applicable privilege or immunity doctrines.

Subject to and without waiving any of its general and specific objections, HID responds as follows:  HID incorporates by reference, as if set forth in its entirety, Section II of its Paragraph 7(a) Disclosures, served May 19, 2022.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e).   HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 5:**

Identify and describe in detail all Communications, including any Communications between You any third parties, relating to the Named Inventors, Vector Flow, Vector Flow's products, or Your allegations regarding Vector Flow's alleged use of HID Confidential Information, including an identification of the date, the Persons involved, the subject matter, and any documents relating thereto.  If You contend that any Communications responsive to this Interrogatory are privileged, then provide all non-privileged information about the Communication, including the authors, recipients, date, and general nature (written or oral) of the Communication.

**RESPONSE TO INTERROGATORY NO. 5:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. HID further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. HID also objects to this Interrogatory as vague and ambiguous based on the term or phrase "Vector Flow's products." HID further objects to this Interrogatory as irrelevant to any party's claims or defenses and not proportional to the needs of the case to the extent that it seeks communications that have a subject matter other than HID's claims in this litigation. HID also objects to this Interrogatory to the extent that it seeks documents

afforded by law. HID further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, because its scope is not limited in time to any time period relevant to the case.  HID also objects to this Interrogatory as vague and ambiguous based on the term or phrase "Vector Flow Confidential Information." HID further objects to this Interrogatory as irrelevant to any party's claims or defenses and not proportionate to the needs of the case, because no claim or defense depends on or concerns access to any Vector Flow information.  HID also objects to this Interrogatory to the extent that it seeks information that is publicly available or that is equally or more accessible to Vector Flow than to HID.  HID further objects to this Interrogatory as compound because it includes multiple subtopics and seeks information about documents and people with knowledge about a range of facts, opinions, arguments, inferences, and therefore, constitutes multiple interrogatories.

Subject to and without waiving any of its general and specific objections, HID responds as follows:

Vinutha Srikantaiah had access to certain Vector Flow documents when she was employed at Vector Flow's contractor, Innominds, to work on Vector Flow projects.  Ms. Srikantaiah's access to Vector Flow documents ceased upon the termination of her employment with Vector Flow's contractor Innominds.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e).  HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 7:**

Identify any products of HID and/or any licensee You contend embody or practice any claim of the Patents-in-Suit, including an identification of the dates during which the products You identify practiced any claims of the Patents-in-Suit, an indication as to whether those products are now or have ever been marked with the Patents-in-Suit pursuant to 35 U.S.C. § 287, and an identification of the date(s) from which the product(s) were first marked.

**RESPONSE TO INTERROGATORY NO. 7:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID further objects to this Interrogatory as irrelevant because HID has asserted only method claims in the suit, and "[t]he marking requirement does not apply when only method claims are asserted." *Sipco, LLC v. Aruba Networks, LLC*, No. 20-cv-537-MN, 2021 U.S. Dist. LEXIS 107916, at *7 (D. Del. June 9, 2021); *see also Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 6399, at *3 (D. Del. Jan. 21, 2015) (same); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("35 U.S.C. § 287(a) d[oes] not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims"). HID further objects to this Interrogatory to the extent that even if a marking defense applied—which it does not—the Interrogatory attempts to improperly shift to HID Vector Flow's "initial burden of production to articulate the products it believes are unmarked patented articles subject to § 287." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). HID further objects to this Interrogatory the extent it calls for a legal conclusion. HID further objects to this Interrogatory because it prematurely seeks information that will be the subject of expert discovery. Such information will be disclosed according the deadlines set by the Court's Scheduling Order.

Subject to and without waiving any of its general and specific objections, HID responds as follows:

HID has only asserted method claims in this litigation, and therefore, the issue of marking pursuant to 35 U.S.C. § 287 is not relevant.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e). HID reserves the right to amend this response in view of further information elicited during discovery.

███████████████████████████████████

**INTERROGATORY NO. 12:**

Identify with specificity any and all HID Source Code that You contend practices, embodies, or otherwise reflects each alleged Trade Secret(s) You identify in response to Vector Flow's Interrogatory No. 1, including an identification of each specific portion of code and allegedly corresponding Trade Secret, its location in HID's production, all Persons, whether employed by HID or not, who contributed to the Source Code's development and the role of each Person in its development, the corresponding date(s) of implementation and/or revision, and each HID product sold or licensed that has now or ever utilized the Source Code practicing the Trade Secret(s).

**RESPONSE TO INTERROGATORY NO. 12:**

HID incorporates by reference each of its General Objections as if fully set forth herein.

HID further objects to this Interrogatory as compound because it includes multiple subtopics and seeks information about documents and people with knowledge about a range of facts, opinions, arguments, and inferences, and therefore, constitutes multiple interrogatories. HID further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case. HID objects to this Interrogatory to the extent it seeks information protected by attorney-client privilege, the work product doctrine, the common interest privilege or any other applicable privilege or immunity doctrines. HID further objects to this Interrogatory to the extent it seeks information not in the possession of HID, HID's agents, or others that HID controls.

Subject to and without waiving any of its general and specific objections, HID responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Vector Flow may derive information responsive to parts of this Interrogatory from the HID SAFE™ source code that HID will make available for inspection.

At least the following individuals have contributed to HID's SAFE™ source code:

- Vikrant Ghai

- Shailendra Sharma

███████████████████████████████████

- ████████████
- ██████
- ████████████
- ████████████

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e). HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 13:**

Identify with specificity any and all HID Source Code that You contend practices or embodies any claim of any Asserted Patent, including, in chart form, an identification of each limitation of the Asserted Patents practiced by the HID Source Code, and a corresponding identification of the specific HID Source Code (by version, file name, and line number) that practices each limitation.

**RESPONSE TO INTERROGATORY NO. 13:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID further objects to this Interrogatory as irrelevant because HID has asserted only method claims in the lawsuit, and "[t]he marking requirement does not apply when only method claims are asserted." *Sipco, LLC v. Aruba Networks, LLC*, No. 20-cv-537-MN, 2021 U.S. Dist. LEXIS 107916, at *7 (D. Del. June 9, 2021); *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 6399, at *3 (D. Del. Jan. 21, 2015) (same); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("35 U.S.C. § 287(a) d[oes] not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims"). HID further objects to this Interrogatory because it prematurely seeks information that will be the subject of expert discovery. Such information will be disclosed according the deadlines set by the Court's Scheduling Order. HID further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it

calls for an identification of "any and all HID Source Code."

Subject to and without waiving any of its general and specific objections, HID responds as follows:

As HID has only asserted method claims, marking for purposes of damages pursuant to 35 U.S.C. § 287 is not relevant.  HID further states that, prior to the acquisition by HID, Quantum Secure, Inc. has represented, including, for example, in a December 6, 2012 press release, that the SAFE product is covered by one of the Patents-in-Suit, the '704 Patent.  *See, e.g.*, https://web.archive.org/web/20140224015942/http://www.quantumsecure.com:80/quantum-secure-reports-approval-of-patent-on-core-technologies/

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e).  HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 14:**

Describe with specificity (*e.g.*, by file, and line number) all portion(s) of Vector Flow's Source Code that You contend contain, reflect, or result from the misappropriation of HID's Trade Secret information, including detailed descriptions of the HID Trade Secret information (*e.g.*, specific portions of HID source code) that You contend to correspond to each such portion of Vector Flow's Source Code.

**RESPONSE TO INTERROGATORY NO. 14:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID further objects to this Interrogatory because it prematurely seeks information about Vector Flow's source code and misappropriation of HID's trade secrets before HID has had the opportunity to conduct full discovery and before Vector Flow has produced all versions and revisions of its source code.  *See* July 12 and July 15, 2022 Emails from S. Zaharia to J. Landsvik. HID further objects to this request as vague and ambiguous based on the phrase "Vector Flow's Source Code."  HID further objects to this request because it prematurely seeks information that

will be the subject of expert discovery.  Such information will be disclosed according to the deadlines set by the Court's Scheduling Order.  HID further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case.

## INTERROGATORY NO. 15:

Describe in detail all acts that You contend were involved in the misappropriation of HID's Trade Secret information, including a detailed description of all direct and indirect evidence of any alleged misappropriation and all information regarding who, what, when, where, and how relating to each alleged act of misappropriation.

## RESPONSE TO INTERROGATORY NO. 15:

HID incorporates by reference each of its General Objections as if fully set forth herein. HID further objects to this Interrogatory because it prematurely seeks "all direct and indirect evidence of any alleged misappropriation" before HID has had the opportunity to conduct full discovery and before Vector Flow has produced all versions and revisions of its source code.  *See* July 12 and July 15, 2022 Emails from S. Zaharia to J. Landsvik.  HID further objects to this request as vague and ambiguous based on the phrase "all acts … involved in the misappropriation of HID's Trade Secret information."  HID further objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case, because the phrase "all acts … involved in the misappropriation of HID's Trade Secret information" extends beyond any proportional relevance to the parties and claims in this case.  HID further objects to this Interrogatory as compound because it includes multiple subtopics and seeks information about documents and people with knowledge about a range of facts, opinions, arguments, and inferences, and therefore, constitutes multiple interrogatories.  HID further objects to this Interrogatory to the extent that it calls for a legal conclusion.  HID objects to this Interrogatory to the extent it seeks information protected by attorney-client privilege, the work product doctrine, the common interest privilege or any other applicable privilege or immunity doctrines.

████████████████████████████

Subject to and without waiving any of its general and specific objections, HID responds as follows:

Ajay Jain, Vikrant Ghai, and Shailendra Sharma (the "Founders") appear to have used HID's trade secret source code in their launch of Vector Flow and the development of its products, including the Vector Flow Platform.  Given their prior highly critical positions at Quantum Secure and HID, both before and after the HID acquisition, the Founders had substantial access to a wealth of confidential information about HID's business and technology, including HID's source code. Based on information available to date, the Founders used their insider access to assist in the development of Vector Flow's directly competing products, including the Vector Flow Platform, and to do so much more quickly than if Vector Flow had started from scratch.  The use of HID's source code is evident from the inclusion in Vector Flow's offerings of multiple functions that are both time-consuming to develop and valuable to only a small number of potential consumers of the products.  It would represent a staggering misallocation of resources for a new identity/security management software company, such as Vector Flow, to develop and include such features in an initial launch or early-stage product.  Indeed, much of this niche software functionality only exists in HID's product because it was developed over many years based on specific requests from customers.  The fact that such features now appear in Vector Flow's nascent products, coupled with the Founders' access to HID source code and proprietary technology, indicates that Vector Flow and the Founders misappropriated trade secret HID source code and used it as a foundation for Vector Flow's software.

For example, Vector Flow's website states that it offers solutions for "Solving Physical Access Compliance Challenges," a "Physical Workforce Identity Product Suite," and a "Physical Identity and Access Manager (PIAM)," just to name a few.  Vector Flow's products are highly

similar to products that the Founders developed at Quantum Secure and HID, and therefore Vector Flow's products directly compete with HID.

Vector Flow's products are also more advanced than would be expected without a head start from use of HID's source code. Based on information available to date HID's source code was used at least in part to develop Vector Flow's products, suggesting that Vector Flow not only improperly competes with HID, but also that the Founders used their access to HID's trade secrets to further that improper competition.

Several features that Vector Flow touts for its offerings provide evidence that the Founders used HID source code as the foundation for Vector Flow's products. On its website, Vector Flow provides the following screenshot part of its product:



*See* https://vectorflow.com/wp-content/uploads/Identity-Manager_PIAM.png. On the far left side, there is a top level menu, with the entry for "Identity Manager" selected. It appears that an individual Identity for someone named "Shawn Terry" is selected, and below a thumbnail of that

person's Identity, there is a menu comprising: Summary, Identity Profile, Cards, Access Areas, Delegates, Vehicles, Documents, Team, Requests, Tasks, Advisories, History, Interface Status, Administration.

This list indicates that Vector Flow's product includes features that it would have been extremely difficult to have been developed during Vector Flow's short corporate existence without use of HID's trade secret source code.

For example, a "History" feature is nice to have, and customers would eventually request it, but it would not be a feature expected in a brand-new identity management program.

The "Delegates" feature is also an unlikely addition for a new product. Setting up a system to delegate and revoke permission is complicated, and while larger customers may request it, it is not typically a critical day-one feature, but rather a later addition after a customer is already on-boarded and has a functioning system. It, therefore, would be highly unlikely to appear in a from-scratch early version of any identity management software.

"Teams" suggests a reporting structure, which is an advanced identity management function with narrow use cases.

"Vehicles" appears to reference a niche application that Defendants would have little to no reason to build from scratch so early on.

"Advisories" is likely a form of observations about the employee used for risk management, yet another late stage and complicated feature that should not exist in a new company's product.

Interface Status and Photo Renewal features are also types of functionality that indicate a late-stage product, with years of specific requests from customers and specific solution development that should not exist in a newer offering like Vector Flow's unless it was based on a

pre-existing code base.

Other than being suspiciously advanced for its young age, some of the apparent features of Vector Flow's product reflect idiosyncrasies in HID's code base that are highly likely to be carryovers from that code base. For example, the profile shown above asks for the "Mobile Carrier." HID's products include this functionality, but the feature was added to HID's product as a specific workaround for a niche problem. There is usually no reason for a company to track this information, and when they do need the information, there are very inexpensive options for determining the carrier automatically.

Another screen shot from Vector Flow's product shows still more suspicious features:



The "Rec" and "Time Code" fields are both advanced, niche features that have appeared in HID's software, but they are highly unlikely to appear in a new program built from the ground up. "Site" suggests location-based functionality, another complex piece of code.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e).  HID reserves the right to amend this response in view of further information elicited during discovery.

**INTERROGATORY NO. 16:**

Identify with specificity all Persons with any current or former relation to HID, including officers, directors, employees, partners, agents, consultants, representatives, and independent contractors, that You contend the Individual Defendants contacted or solicited after Individual Defendants' termination from HID, including an identification of which Individual Defendant made contact with the Person, the date(s) of the communication(s), the medium of such communication(s), the substance of such communications, the circumstances leading to the first communication, and all documents relating to the foregoing (*see, e.g.*, S.D.N.Y. Compl. ¶ 66).

**RESPONSE TO INTERROGATORY NO. 16:**

HID incorporates by reference each of its General Objections as if fully set forth herein. HID objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  HID further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. HID also objects to this Interrogatory to the extent it seeks information not in the possession of HID, HID's agents, or others that HID controls.  HID further objects to this Interrogatory to the extent that it seeks information that is equally or more accessible to Vector Flow than to HID.  HID also objects to this Interrogatory as irrelevant to any party's claims or defenses and not proportionate to the needs of the case, because it seeks information related to actions other than those prohibited under the Individual Defendants' contractual obligations to HID and/or as to time periods outside the relevant period for those contractual obligations.

Subject to and without waiving any of its general and specific objections, HID responds as follows:

Defendant Vikrant Ghai solicited, encouraged, recruited, and/or induced at least Vinutha

- 25 -

seeks information that is not appropriately limited in scope or in time to a period relevant to Individual Defendants' contractual restrictions.

HID's discovery and investigation are continuing, and HID will supplement its response to this Interrogatory as needed in compliance with Federal Rule of Civil Procedure 26(e).  HID reserves the right to amend this response in view of further information elicited during discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

OF COUNSEL:

Marc J. Pensabene
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

David R. Eberhart
Sorin G. Zaharia
Betelhem Gedlu
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

Eric Amdursky
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
(650) 473-2600

August 1, 2022

*Attorneys for Plaintiff HID Global Corporation*

# EXHIBIT E



Heidi L. Keefe                                                          VIA EMAIL
T: +1 650 843 5001
hkeefe@cooley.com


August 9, 2022

Jack B. Blumenfeld                              Marc J. Pensabene
Jennifer Ying                                   O'Melveny & Myers LLP
Morris, Nichols, Arsht & Tunnell LLP            Times Square Tower
1201 North Market Street                        7 Times Square
P.O. Box 1347                                   New York, NY 10036
Wilmington, DE 19899                            mpensabene@omm.com
jblumenfeld@morrisnichols.com
jying@morrisnichols.com


David R. Eberhart                               Eric Amdursky
Sorin G. Zaharia                                O'Melveny & Myers LLP
Betelhem Gedlu                                  2765 Sand Hill Road
O'Melveny & Myers LLP                           Menlo Park, CA 94025
Two Embarcadero Center, 28th Floor              eamdursky@omm.com
San Francisco, CA 94111
deberhart@omm.com
szaharia@omm.com
bgedlu@omm.com


Re:     *HID Global Corp. v. Vector Flow, Inc.*, C.A. No. 21-cv-1769-VAC-JLH (D. Del.)
        *HID Global Corp. v. Jain, et al.*, C.A. No. 22-203-VAC-JLH (D. Del.)


Dear Counsel:

We write regarding serious deficiencies in HID's Responses and Objections to Defendants' Second Set of
Interrogatories, served on HID on June 30, 2022.  As specifically detailed below, HID's Responses are
insufficient and highlight the lack of support for many of HID's allegations.  We request that HID supplement
its responses by August 19, 2022, or otherwise provide a time in the next week for lead and local counsel
to meet and confer regarding HID's responses.

**I.   Deficiencies in HID's Responses to Interrogatories**

    **A.   Response to Interrogatory No. 4**

Interrogatory No. 4 requests that HID identify its computation of each category of damages it alleges should
be awarded to HID, including all legal and factual bases thereof.  HID only points to its Paragraph 7(a)
disclosures, which does not provide a meaningful substantive answer to this Interrogatory.

Defendants are materially prejudiced by HID's withholding of the basis for its pleaded claims for damages,
which would inform the proper scope of discovery and Defendants' development of their responsive



Jack B. Blumenfeld, et al.
Re: *HID Global Corp. v. Vector Flow, Inc.*, C.A. No. 1:21-cv-01769 (D. Del.)
August 9, 2022
Page Two

defenses.  HID must provide a comprehensive, substantive answer to this Interrogatory based on the information and discovery currently available to HID, or risk preclusion.  *See, e.g., MLC Intellectual Property, LLC v. Micron Tech.*, 10 F.4th 1358, 1369–73 (Fed. Cir. 2021) (affirming district court striking and precluding damages contentions that were not timely disclosed).

If HID fails to adequately supplement its response to this Interrogatory, Defendants reserve the right to move to compel.

### B.  Response to Interrogatory Nos. 7 and 13

Interrogatory No. 7 requests that HID identify any product(s) of HID's or any licensee that it contends embodies or practices any claim of the Patents-in-Suit, including an identification of the dates during which the products HID identify practiced any claims of the Patents-in-Suit, an indication as to whether those products are now or have ever been marked with the Patents-in-Suit pursuant to 35 U.S.C. § 287, and an identification of the date(s) on which the product(s) were first marked.  Interrogatory No. 13 relatedly requests that HID identify HID source code that practices any claim of the Patents-in-Suit.

HID refuses to respond except to say that 35 U.S.C. § 287 is inapplicable because HID asserts only method claims.  HID's non-answer ignores the thrust of each Interrogatory, which seeks an answer to whether HID contends any HID or licensee products have practiced each patent or not (Interrogatory No. 7) and corresponding identification of source code (Interrogatory No. 13).  HID's fulsome answer to each Interrogatory is squarely relevant to numerous issues in this case, including for determining the availability of damages, royalties, and/or injunctive relief, as well as claim construction and the scope and content of prior art under HID's claim interpretations.  HID has no basis to refuse to answer.  The requested relevant discovery is solely within the possession of HID, and there is no basis to withhold it.  Indeed, HID's response to Interrogatory No. 13 suggests that HID believes that HID SAFE may in fact relate to the '704 patent, but HID has provided no substantive answer to either Interrogatory.

Furthermore, Interrogatory No. 7 requests HID's contention as to whether any HID or licensee product embodies or practices *any* claim of the Asserted Patents, not just those presently asserted against Vector Flow.  Whether HID marked, or failed to mark, its products is plainly relevant to that analysis, and such information should be readily available to HID.

If HID fails to adequately and timely supplement its response to these Interrogatories, Defendants will move to compel.

### C.  Response to Interrogatory No. 11

Interrogatory No. 11 requests that HID describe *in detail* the legal and factual bases for its pleaded contention that Vector Flow is estopped from contesting the validity of the Patents-in-Suit, referencing the allegations in HID's Delaware Complaint at paragraphs 58 and 76.  Despite Defendants' request for a detailed, comprehensive response, HID response is broad and vague, and gestures to the entire 2015 Merger Agreement between HID and Quantum Secure (which HID did not attach to its complaint and has not produced).

HID must supplement its response to provide a comprehensive response to this Interrogatory, including describing, *in detail*, the specific bases for its contention, including any relevant terms and provisions of the 2015 Merger Agreement and any other relevant facts and circumstances.  If HID refuses to do so, please



Jack B. Blumenfeld, et al.
Re: *HID Global Corp. v. Vector Flow, Inc.*, C.A. No. 1:21-cv-01769 (D. Del.)
August 9, 2022
Page Three

explicitly confirm that HID has no more specific factual or legal basis for its pleaded contention of assignor estoppel, and does not intend at any later date to raise any contention more specific than its general reference to Defendants' sale of the patents and citation to *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298 (2021).  Otherwise, Defendants will move to compel the factual and/or legal bases that HID is improperly withholding.

### D.  Response to Interrogatory No. 12

Interrogatory No. 12 requests that HID describe with specificity all HID source code that HID alleges practices, embodies, or otherwise reflects each alleged trade secret identified in response to Defendants' Interrogatory No. 1, including identifications of specific portions of code and allegedly corresponding trade secrets, the location in HID's production, all persons who contributed to the source code's development and their role, the corresponding date of implementation and/or revision, and each HID product sold or licensed that has ever utilized the source code practicing the alleged trade secret.  In response, HID simply invokes Federal Rule of Civil Procedure 33(d) and provides a potentially incomplete list of individuals who contributed to the development of HID SAFE's source code, without even a minimal description of what each person developed or to which portions of HID code they had access.

Invocation of Rule 33(d) is not appropriate here.  The burden of deriving or ascertaining the answer to this Interrogatory is not substantially the same for either party.  Fed. R. Civ. P. 33(d).  HID—as the plaintiff that alleges its source code constitutes a trade secret that has been misappropriated—must identify and describe the specific portions of the code that constitute the alleged trade secret at issue.  Vector Flow cannot possibly know which detailed components of HID's entire source code constitute the supposed trade secret.  The requested discovery is squarely relevant and solely within the possession of HID.  HID's refusal to provide a written response to this Interrogatory suggests an inability to do so because HID either cannot claim trade-secret protection over its entire code or portions thereof, or because any such code was not misappropriated.

Accordingly, please confirm that HID will supplement its response to this Interrogatory by August 19 to identify which specific portions of the source code are allegedly trade secret, where those portions are located in HID's production, a complete list of all persons who have contributed to the development of the source code and their role, the corresponding dates of implementation and/or revision, and each HID product sold or licensed that has ever utilized the source code practicing the alleged trade secret.

### E.  Response to Interrogatory No. 14

Interrogatory No. 14 requests that HID describe with specificity—*e.g.*, by file and line number—all portions of Vector Flow's source code that HID contends contains, reflects, or results from the misappropriation of HID's trade secret information, including detailed descriptions of HID trade secret information, such as specific portions of HID source code, that correspond to each such portion of Vector Flow's source code.

Vector Flow made its source code for the accused products available at the offices of Vector Flow's counsel in Palo Alto, California on June 30, 2022.  To date, the code has been reviewed by two of HID's experts for over a dozen days, for approximately eight hours a day per day, and HID's infringement contentions served August 1, 2022 extensively cite to the source code.  Despite the dozens of hours HID's experts have spent with Vector Flow's source code, and extensive citations to the source code in its contentions, HID has not and cannot come close to showing that Defendants misappropriated HID's "entire source code."  (*See also* 6/30/2022 Letter from H. Keefe at 2.)



Jack B. Blumenfeld, et al.
Re: *HID Global Corp. v. Vector Flow, Inc.*, C.A. No. 1:21-cv-01769 (D. Del.)
August 9, 2022
Page Four

HID's claim of misappropriation simply cannot stand without this information and its refusal to provide this information suggests that it is unable to do so.  Please confirm that HID will supplement its response to this Interrogatory by August 19 to identify with specificity all portions of Vector Flow's source code that HID contends contains, reflects, or results from the misappropriation of HID's trade secret information, including references to detailed descriptions of HID trade secret information.  Otherwise, Defendants will seek appropriate relief from the Court.

**F.  Response to Interrogatory No. 15**

Relatedly, Interrogatory No. 15 requests that HID describe in detail all acts that HID contends were involved in the misappropriation of HID's trade secret information, including a detailed description of all direct and indirect evidence of any alleged misappropriation and all information regarding who, what, when, where, and how relating to each alleged act of misappropriation.

Instead of providing any substantive response, HID simply copies-and-pastes the allegations from its complaints, reiterating that an entire set of source code is the alleged trade secret and gesturing to public, non-trade secret features of HID and Vector Flow products to suggest out of whole cloth that there has been some act of misappropriation.  But those allegations were insufficient at the pleading stage (*see, e.g.*, D.I. 11 at 6–8), and your refusal to answer this Interrogatory further highlights their inadequacy now.  It is well-established that similarities in public features do not constitute trade secrets.  *See, e.g., XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. CIV.A. 09-157-RGA, 2013 WL 867640, at *4 (D. Del. Mar. 8, 2013), *aff'd* Fed. Cir. 14-1281 (Jan. 21, 2015) (entering judgment against plaintiff because the "asserted trade secrets" merely described "the methodology implementing certain features").  HID must provide *evidence*, including citations to specific portions of HID source code reflected in Vector Flow's source code.  HID's reliance on insufficient allegations from its complaints—after having had access to Vector Flow's source code for over a month—is telling.

Please confirm that HID will supplement its response to this Interrogatory to describe in detail all acts that it contends were involved in the alleged misappropriation of its trade secret information, including detailed descriptions of all direct and indirect evidence and all information regarding who, what, when, where, and how.  In the alternative, please confirm that HID has no further responsive information that it will disclose, confirming the baseless of HID's trade secret claims.

**II.  HID's Responses to Interrogatories Nos. 3, 6, 8, 11, 12, and 16**

With respect to HID's substantive responses to Interrogatories Nos. 3, 6, 8, 11, 12, and 16, please confirm that HID's answers are complete to its current knowledge and investigation, and that HID is not withholding any information based on its objections.

Sincerely,

*/s/ Heidi L. Keefe*

Heidi L. Keefe

# EXHIBIT F



David N. Murdter
T: +1 650 843 5881
dmurdter@cooley.com

September 28, 2022

By Email

Natalie A. Bennett
+1 202 739 5559
Natalie.bennett@morganlewis.com
1111 Pennsylvania Ave., NW
Washington, D.C. 20004

Counsel:

We are in receipt of your correspondence dated September 23, 2022.

Despite months of full access to and review of Vector Flow's source code, HID has been unable to identify even a single line of HID source code that is allegedly contained in Vector Flow's code. Nor has HID been able to identify any Vector Flow source code that allegedly evidences a breach of contract. We appreciate HID's representation in your September 23 letter that "HID is diligently comparing the Vector Flow and HID SAFE source code." To date, though, HID has not identified any evidence of misappropriation. While we are more than willing to cooperate with HID as to reasonable discovery requests, we cannot abide by HID's improper fishing expeditions.

We address each of the items in your letter in turn:

    **I.**    <u>**HID's Discovery Requests to Defendants**</u>

        **a.**   **HID's False Accusations of Allegedly "Deleted" or "Missing" Source Code**

HID's insinuations regarding alleged "deletions" of source code are false, inflammatory, and highly misleading.

HID's correspondence alleges, for example, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In fact, the content of the allegedly "deleted" source code files has been, and remains, fully available for review in Vector Flow's source code production ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to which your reviewers have had access from the beginning. The "deletions" to which HID's letters refer indicate only that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ not that the code content itself was deleted from the repository. Indeed, as you should be aware, the purpose of a git repository is to maintain version control over a codebase and memorialize the changes that are made, which routinely involve "deletions" as code is revised and updated, much like a redline which shows the deletions in "show all" mode but does not show them in "show final" mode. We suggest that you revisit this point with your source code reviewer, who is scheduled to be onsite reviewing the code for at least three days this week.

For these reasons, HID's unsupported accusations—raised in your August 29th and September 12th letters and repeated again during the parties' meet and confer—that Vector Flow has not properly preserved



By Email
Natalie A. Bennett
September 28, 2022
Page Two

relevant information is unfounded and not well taken. We also take exceptions to your meritless suggestion, stated during the parties' meet and confer, that updates to the codebase in the ordinary course of business, all of which are reflected in git, are in any way "suspicious."

Similarly, with respect to allegedly "missing source code repositories" relating to Innominds, HID has not shown that anything is "missing."  Vector Flow has produced all of the source code for Accused Product software as of July 2022 that is in its possession, custody, or control.

        **b.** ▆ **Tickets and Former HID Employees**

HID has requested that Vector Flow produce "the complete source code ticket repositories" for Vector Flow's accused software, but HID has failed to show that any tickets are reasonably relevant to the issues in this case.  *See* August 29, 2022 letter from HID.  For example, although HID alleges in its correspondence that the ▆ tickets *might* provide additional context as to various exemplary commits in the Vector Flow codebase, HID has tellingly refused to even represent—let alone show—that the implicated code contains or reflects HID's trade secret information, or else relates in any way to HID's patent claims.  HID's unsupported proclamation that ▆ tickets are "relevant" does not make them so.

Nevertheless, and contrary to the representations in your September 12, 2022 letter, Vector Flow has not "refus[ed] to produce its source code ticket repositories." Rather, as previously set forth in Defendants' September 2, 2022 letter to HID and further explained during the parties' meet and confer, HID's demand that Vector Flow produce wholesale the *entirety* of its largely irrelevant ▆ ticket repository is unsubstantiated, unduly burdensome, and not proportional to the needs of the case—particularly in view of HID's failure to identify even a single line of the Vector Flow source code that allegedly contains, reflects, or resulted from the alleged misappropriation of HID's trade secret information.  By HID's own assertion, there would be ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ which would require an unduly burdensome and costly effort to collect, review, and produce, without any showing of reasonable relevance to any issue.

Notwithstanding HID's discovery deficiencies, Vector Flow would be willing to produce a targeted set of ▆ tickets that are shown to be reasonably relevant to the issues in this case, provided that: (1) HID narrow its request to specific tickets or source code modules that it shows to be reasonably relevant to its claims, and (2) HID commit to producing source code ticket information (whether in ▆ or an equivalent system) for the HID SAFE source code on equal terms.  For example, if HID were able to demonstrate that a certain module of HID's SAFE source code were contained within Vector Flow's source code (which is not the case), then ▆ tickets regarding the addition of that module to Vector Flow's source would be reasonably discoverable to the extent they existed.

Vector Flow's proposal is eminently reasonable, and resolves both HID's desire for additional context about specific commits in the Vector Flow codebase (to the extent HID identifies any commits that are actually relevant to its claims), as well as Vector Flow's concern regarding the substantial burden of exporting and reviewing every single source code ticket since the inception of the company, the vast majority of which are indisputably irrelevant to the claims at issue in this litigation.

We note that despite demanding further document productions from Vector Flow, HID has not produced any documents at all outside of its native source code.  If HID is insisting that all ▆ tickets must be produced, please confirm in writing by no later than October 7, 2022 whether HID will be producing the entire source code ticket repositories for the HID SAFE codebase that practices the patents.



By Email
Natalie A. Bennett
September 28, 2022
Page Three

Similar points apply to HID's blanket request for unfettered discovery into certain individuals who purportedly authored Vector Flow source code. As an initial matter, it is unclear what exactly HID is requesting with respect to these individuals above and beyond what Vector Flow has already indicated it will produce. For example, Vector Flow stated during the parties' meet and confer that it is continuing to collect and review documentation for the Vector Flow product responsive to HID's RFP No. 1, and will produce such material on a rolling basis.

If HID could point to a specific portion of Vector Flow source code authored by one of these individuals that contains HID SAFE source code (which is not the case), then reasonably targeted further discovery would be warranted. Absent any initial showing of relevance, however, HID's overbroad requests amount to a baseless and unduly burdensome fishing expedition. Nevertheless, if HID would like to identify any one or more of these individuals to replace others among the limited set of custodians for whom ESI will be searched according to the parties' mutual ESI protocol, please let us know, and please also confirm that HID will be producing the documents in its possession relating to each of these former HID employees as a condition precedent to any production by Vector Flow.

      c.  **Operational Software**

Vector Flow remains willing to discuss the parties respectively making available operational software. So that we can evaluate this item, please confirm that HID is willing to make available operational software for all versions of HID SAFE, which is relevant both to HID's trade secret and patent claims. Once we have that confirmation, we will be willing to discuss this item further with you at a mutually agreeable time.

    II.   <u>**Defendants' Pending Discovery Requests to HID**</u>

      a.  **Supplementation of HID Discovery**

We appreciate your confirmation that HID will supplement within 10 days its responses to Defendants' Interrogatories Nos. 4, 7, and 11, as well as Defendants' Requests for Production Nos. 21 and 36. We also appreciate your confirmation that HID will collect and produce access logs from October 2020 onward.

      b.  **Review of HID SAFE Source Code**

While we appreciate HID making versions 3, 4, and 5 of the HID SAFE source code available for inspection, we are confounded by HID's inability to explain its failure to locate prior versions of the code, including versions 1 and 2. In its court filings, discovery responses, and correspondence with Defendants, HID has repeatedly and consistently insisted that the "*entire*" source code for the HID SAFE product constitutes its protected trade secret information. These assertions, however, are directly refuted by HID having seemingly and inexplicably lost *two complete revisions* to its "protected" source code. Please confirm in writing by no later than October 7, 2022 whether HID will be making all prior versions of the HID SAFE source code, including versions 1 and 2, available for inspection. If HID is unable to do so, please explain in writing by no later than October 7, 2022 why that is the case.

Equally confounding is HID's repeated refusal to confirm that the HID SAFE source code made available for inspection comprises all of the trade secrets that were allegedly misappropriated by Defendants. This discovery goes to the heart of HID's trade secret claims, and HID's inability or unwillingness to confirm such baseline information is highly prejudicial to Defendants. Please confirm in writing by no later than October 7, 2022 whether the HID SAFE source code made available for inspection comprises all of the trade secrets



By Email
Natalie A. Bennett
September 28, 2022
Page Four

that were allegedly misappropriated by Defendants. If HID is unable or unwilling to so indicate, please explain in writing by no later than October 7, 2022 your reasons for refusing to do so.

### c.   Defendants' Trade Secret Interrogatories to HID

Defendants' outstanding trade secret interrogatories to HID (e.g., Interrogatories Nos. 1, 12, 14, and 15) seek not only an explanation of the "specific means by which the misappropriation of the HID SAFE source code occurred," but an identification of *what*, if anything, was allegedly misappropriated. HID's indication that its investigation is ongoing does not excuse its failure thus far to identify *any* portion of the Vector Flow source code as containing, reflecting, or resulting from alleged misappropriation, particularly after HID's experts have spent 150+ hours reviewing Vector Flow's code.

HID is correct that the Court has allowed discovery to proceed in this matter, but discovery is not a one-way street.  Vector Flow produced its entire source code repository, which would reflect any alleged trade secret misappropriation if any such misappropriation had actually occurred, since HID has said the code is its trade secret.  Having spent hundreds of hours reviewing Vector Flow's code over the course of multiple months, HID must now also abide by its obligations to substantively respond to Vector Flow's interrogatories. The Court's order permitting discovery to proceed does not somehow permit HID to refuse to substantively answer Vector Flow's interrogatories until HID is satisfied that its investigation is complete. Furthermore, HID's suggestion that it requires unfettered discovery into *non-source code evidence* before it can substantively respond to Vector Flow's trade secret interrogatories is not only unfounded under the Federal Rules, but also particularly confusing given that HID has repeatedly pointed to *currently implemented features* of the Vector Flow product as allegedly evidencing the misappropriation of HID's trade secrets. (*See, e.g.,* HID's Resp. to Def's Rog. 15; Compl., ¶¶35-50.)  HID has had access to the code underlying those features for months, yet notably has refused to state whether any of that code actually evidences the misappropriation that HID has alleged. As such, please promptly supplement your responses or drop your allegations.


Sincerely,

 /s/ David N. Murdter

David N. Murdter

# EXHIBIT G



Heidi L. Keefe                                                                    VIA EMAIL
T: +1 650 843 5001
hkeefe@cooley.com


October 7, 2022


Natalie A. Bennett
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
natalie.bennett@morganlewis.com

**Re:**   *HID Global Corp. v. Vector Flow, Inc.*, C.A. No. 21-1769-GBW (D. Del.)
          *HID Global Corp. v. Jain, et al.*, C.A. No. 22-203-GBW (D. Del.)

Counsel:

We write regarding serious deficiencies in HID's discovery responses. As specifically detailed below, HID's discovery responses remain deficient despite numerous requests from Defendants to supplement.

**I.     HID's Responses to Defendants' Requests for Production.**

In its August 26, 2022 Responses and Objections to Vector Flow's First Set of Requests for Production to Vector Flow, HID indicated that it would be willing to meet and confer regarding the relevance and scope of Vector Flow's Requests Nos. 31, 59, 63, and 72. Please provide your availability before October 14, 2022 to meet and confer regarding those requests, and please be prepared to discuss what concerns, if any, you have as to those requests' relevance and scope.

**II.    HID's Deficient Responses to Defendants' Interrogatories.**

On August 9, we sent a letter setting forth the deficiencies in HID's interrogatory responses. (8/9/2022 Letter from H. Keefe.) Receiving no response, we followed up on September 2 to request that HID supplement its responses. (9/2/2022 Letter from H. Keefe.) The parties conferred on September 19 regarding these deficiencies and HID committed in subsequent correspondence to supplement its responses to only a subset of the identified interrogatories. (9/23/2022 Letter from N. Bennett.)

**A.     HID's Deficient "Supplemental" Responses to Defendants' Interrogatories.**

On October 5, HID served supplemental responses to Interrogatories Nos. 4, 7, and 11. (Dkt. 79.) However, HID's "supplemental" responses are insufficient and underscore the lack of support for HID's allegations. HID's "supplemental" responses remain substantially deficient and offer little-to-no new information, and instead recycle information already disclosed by HID.

For example, with respect to Interrogatory No. 4, which seeks, *in detail*, HID's computation of each category of damages HID alleges should be awarded, including all legal and factual bases thereof, HID simply restates many of the broad categories of damages set forth in its Paragraph 7(a) Disclosures (served on May 19). The response fails to meaningfully answer the interrogatory based on the information currently available to HID. For example, a vague reference to "lost profits" is insufficient, and HID fails to specify, as clearly required by the Interrogatory, what alleged profits, if any, HID has actually lost so far with reference to specific customer losses.



Natalie A. Bennett
October 7, 2022
Page Two

With respect to Interrogatory No. 7, HID's supplemental response avoids the thrust of the Interrogatory, which seeks "any product of HID and/or any licensee You contend embody or practice any claim of the Patents-in-Suit, including an identification of the dates during which the products You identify practiced any claims of the Patents-in-Suit[.]"  HID's October 5 response only adds that, to HID's knowledge, the Patents-in-Suit have not been marked on HID SAFE.  But absent from HID's supplemental response is an answer as to which products embody or practice the claims and the associated information.

HID's deficient supplementation is especially notable in light of HID's request that Defendants make "meaningful effort[s] to fully respond to [HID's] interrogatories" in Defendants' forthcoming supplemental responses.  (9/23/2022 Letter from N. Bennett.)  Given that the parties already met and conferred on these deficiencies in our September 19, 2022 meet and confer teleconference and HID refused to sufficiently answer the interrogatories, we have no choice but to seek relief from the Court.

**B.      HID's Outstanding Deficient Responses to Defendants' Interrogatories.**

HID has refused to supplement or otherwise remedy its deficient responses to Interrogatories Nos. 12, 13, 14, and 15, despite numerous requests from Defendants and a telephonic meet and confer on September 19, 2022.  (*See* 8/9/2022 Letter from H. Keefe; 9/2/2022 Letter from H. Keefe; 9/28/2022 Letter from D. Murdter.)  As discussed during the parties' September 19 meet and confer, the parties have reached an impasse and Defendants have no choice but to seek relief from the Court.


Sincerely,


*/s/ Heidi L. Keefe*

Heidi L. Keefe

# EXHIBIT H

# Morgan Lewis

**Natalie A. Bennett**
Partner
202.739.5559
natalie.bennett@morganlewis.com

September 7, 2022

**VIA ELECTRONIC MAIL**

Heidi Keefe
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Re: *HID Global Corp. v. Vector Flow, Inc.*, Case No. 21-1769 et al. (VAC) (JLH) (D. Del.)

Dear Heidi,

We are in receipt of your correspondence dated August 9, 2022 and Morgan Lewis has now had the opportunity to look into the issues you raised after being retained as lead national counsel for this litigation.  We look forward to a productive working relationship where both sides commit to providing the discovery required by Delaware practice and the Federal Rules.

Separate and apart from the disputed discovery issues being raised on both sides, we propose that the parties meet-and-confer in the next week to navigate whether to agree to apply search terms to identify discoverable custodial data for the individuals disclosed in the Initial Disclosures.  A global conversation as to forward-looking discovery may reduce the number of disputed issues that ultimately need to be resolved by the Court.  We are also happy to arrange separate meet-and-confer discussions to address the highest priority discovery items recently raised in correspondence from Plaintiff and Defendants.

In addition to the source code and technical discovery issues raised by Jason White in his August 29th correspondence, HID continues to be concerned regarding Defendants' deficiencies in response to HID's propounded interrogatories and requests for production.  It has been *four months* since HID served its requests for production, and Defendants have produced less than 300 pages of documentary evidence.  We ask that you work with

**Morgan, Lewis & Bockius** LLP

1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541          ☎ +1.202.739.3000
United States                              📠 +1.202.739.3001

Page 2

your client to immediately re-focus efforts to identify and produce the requested documents.  We will be working with HID to do the same.

To further any future discussion, HID's specific responses to the points raised in the August 9 correspondence are below.

### I.    HID's Response to Vector Flow Interrogatory No. 4

HID intends to pursue damages for the compensatory harms caused by Vector Flow and its Founders in the form of lost profits, restitution, and disgorgement of Defendants' unjust enrichment.  The extent of the harms inflicted by Defendants and the resulting compensatory damages will be a topic that will be fully explored during the course of discovery.  When Defendants produce the factual underpinnings necessary to determine the scope of the compensatory harms, HID will provide sufficient detail, during fact discovery, to explain the bases for any damages calculations.  At this point in discovery, the requisite factual underpinning to support an overall damages assessment has not been made available.  HID will supplement its interrogatory response when Defendants have complied with their discovery obligations.  *See* FED. R. CIV. P. 26(A)(1)(C), Advisory Committee's Note to 1993 Amendment ("[A] party would not be expected to provide a calculation of damages which, as in many patent infringement actions, depends on information in the possession of another party or person.").

### II.    HID's Response to Vector Flow Interrogatory Nos. 7 and 13

HID disagrees with Defendants' contention in the August 9 correspondence that HID failed to provide a substantive answer to either interrogatory.

Interrogatory No. 7 regarding marking pursuant to 35 U.S.C. § 287 is not relevant, because "35 U.S.C. § 287(a) d[oes] not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009). As Defendants acknowledge, only method claims are asserted here and therefore a defense under § 287(a) is not available as a matter of law.  *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. 17-cv-1734-RGA, 2021 WL 982732, at *7 (D. Del. Mar. 16, 2021) (determining that where a patent holder has asserted only method claims, the notice provisions of Section 287 do not apply even where there are unasserted apparatus claims); *see also SIPCO, LLC v. Aruba Networks, LLC*, No. 20-CV-537-MN, 2021 WL 2363689, at *3 (D. Del. June 9, 2021).

For Interrogatory No. 13, HID has complied with the request by answering that the HID SAFE product originally developed at Quantum Secure practiced the '704 patent, at least as of December 6, 2012.  A further response in the form of claim charts demonstrating how the HID SAFE product practices the patents is overbroad and not relevant to any available defense. *Leader Techs. Inc. v. Facebook Inc.*, No. 08-cv-862-JJF-LPS, 2009 WL 3021168, at *2 (D. Del. Sept. 4, 2009) ("[I]t would be unduly burdensome to require

Page 3

[Plaintiff], as the patentee, to produce detailed claim charts showing precisely how its products practice each of the asserted claims.  This case is fundamentally about whether [Defendant] infringes [Plaintiff']s patent, not about whether Plaintiff practices its own patent."); *Beckman Coulter, Inc. v. Sysmex Am., Inc.*, No. 18-cv-6563, 2019 WL 10250941, at *2-3 (D. Del. Aug. 12, 2019) (finding that it was not proportional to the needs of the case for a patentee to provide a claim by claim analysis of its own products: "[t]he requested claim by claim analysis would require dozens of attorney hours, consultation with [patentee]'s outside expert, and numerous pages of dense analysis. ... The Court finds that [defendant] has not adequately demonstrated why this burdensome claim by claim analysis is justified and proportional to the needs of this case.").

### III.   HID's Response to Vector Flow Interrogatory No. 11

As explained in HID's response to Interrogatory No. 11, the '704 patent and the application for the '088 patent (collectively, "the Patents-in-Suit") were among the intellectual property acquired by HID from Quantum Secure.  (*See* Schedule 3.14 to Merger Agreement.)  The '704 patent issued on July 31, 2012, before the February 9, 2015 effective date of the Merger Agreement.

**The '704 Patent.**  Quantum Secure made both explicit and implicit representations that the intellectual property it sold to HID, including the '704 patent, was valid and enforceable:



---

[1] "Knowledge" is defined in Article 1 and Schedule 1.1(c) of the Merger Agreement as the knowledge of Defendants Jain, Ghai, and Sharma.

███████████████████████

Page 4

**The '088 Application.**  The application for the '088 patent was acquired by HID with the same explicit and implicit assurances of validity at the time of the effective date of the Merger Agreement.

**Applicability of Assignor Estoppel.**
"Assignor estoppel applies when an invalidity defense in an infringement suit conflicts with an explicit or implicit representation made in assigning patent rights." *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2311 (2021).  The facts of this case fit squarely within the fact pattern contemplated by the Supreme Court as "the classic case":

> Courts have long applied the doctrine of assignor estoppel to deal with inconsistent representations about a patent's validity.  The classic case (different in certain respects from the one here) begins with an inventor who both applies for and obtains a patent, then assigns it to a company for value.  Later, the inventor/assignor joins a competitor business, where he develops a similar—and possibly infringing—product.  When the assignee company sues for infringement, the assignor tries to argue—contrary to the (explicit or implicit) assurance given in assigning the patent—that the invention was never patentable, so the patent was never valid.  That kind of about-face is what assignor estoppel operates to prevent—or, in legalese, estop.

*Id.* at 2304.  The assignor's explicit or "implicit representation" that the patent he is assigning is "not worthless ... deprive[s] him of the ability to challenge later the [patent's] validity."  *Id.* at 2305 (citing *Diamond Scien. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1226 (Fed. Cir. 1988)).

Assignor estoppel applies to the '704 patent because Vector Flow's Founders made the exact implicit and explicit assurances in selling the asset to HID that estops any later challenge to the patent's validity.  Assignor estoppel similarly applies to the '088 patent based on the assurances Vector Flow's founders provided to HID regarding that asset, which was later amended to add narrowing limitations to asserted claim 15 and its dependent claims.[2]  HID will produce a copy of the 2015 Merger Agreement and the associated schedules.

## IV.  HID's Response to Vector Flow Interrogatory Nos. 12, 14, and 15

As previously stated in response to Vector Flow Interrogatory No. 1, the entirety of the HID SAFE source code is a trade secret and HID's response identified a non-exhaustive

---

[2] Assignor estoppel applies to the '088 patent because the issued claims are not "materially broader" than the claims in the application as of February 9, 2015.  *See Hologic, Inc. v. Minerva Surgical, Inc.,* 2022 WL 3269623, 44 F.4th ----, at *6-7 (Fed. Cir. Aug. 11, 2022) (affirming district court's application of assignor estoppel upon determining that the claim of the issued patent was not "materially broader" than the claim of the application).

Page 5

list of source code modules.  HID has only recently[3] obtained access to Vector Flow's source code for purposes of comparing it to HID's SAFE source code and that investigation remains ongoing.

Furthermore, as indicated in Jason White's letter of August 29, 2022, HID's access to the source code remains deficient.  If necessary, HID will seek Court intervention to ensure that Vector Flow produces outstanding source code-related discovery so that HID can continue to investigate the scope of the HID SAFE source code that was misappropriated and incorporated into Vector Flow's product offerings.  HID will supplement its response to Interrogatories 1, 12, 14, and 15 when all requested source code-related discovery has been made available and HID has had the opportunity to complete its comparison of the HID SAFE and Vector Flow source code.

HID is also in the process of providing access to Vector Flow source code consultants to review the HID SAFE source code at Morgan Lewis's Palo Alto office.  Once the parties confirm the Vector Flow source code consultants who will be provided access to the HID SAFE source code, we will work with you to confirm the logistics for Vector Flow's review.

## V.    HID's Response to Vector Flow Interrogatory Nos. 3, 6, 8, 11, 12, and 16

HID's discovery and investigation are continuing.  HID will supplement its responses as needed in compliance with FRCP 26(e).  Given that Defendants have not meaningfully responded to HID's discovery requests, it is premature and unrealistic for HID to represent that any response is "complete" when HID has been denied access to the very evidence it needs to complete its responses.  HID expects that as more factual information is made available from Defendants and third parties, HID will continue to supplement its responses to provide notice of the factual and legal bases for its claims.

*         *         *

Best regards,

Natalie A. Bennett

Natalie A. Bennett

cc:    Counsel of Record

---

[3] Vector Flow declined to allow HID's consultant Mr. Plachno access to the source code earlier than July 11, 2022 and first produced an earlier version of the Vector Flow source code on August 5, 2022.

# EXHIBIT I



David N. Murdter
T: +1 650 843 5881
dmurdter@cooley.com

September 28, 2022

By Email

Natalie A. Bennett
+1 202 739 5559
Natalie.bennett@morganlewis.com
1111 Pennsylvania Ave., NW
Washington, D.C. 20004

Counsel:

We are in receipt of your correspondence dated September 23, 2022.

Despite months of full access to and review of Vector Flow's source code, HID has been unable to identify even a single line of HID source code that is allegedly contained in Vector Flow's code. Nor has HID been able to identify any Vector Flow source code that allegedly evidences a breach of contract. We appreciate HID's representation in your September 23 letter that "HID is diligently comparing the Vector Flow and HID SAFE source code." To date, though, HID has not identified any evidence of misappropriation. While we are more than willing to cooperate with HID as to reasonable discovery requests, we cannot abide by HID's improper fishing expeditions.

We address each of the items in your letter in turn:

I.    **HID's Discovery Requests to Defendants**

      a.    **HID's False Accusations of Allegedly "Deleted" or "Missing" Source Code**

HID's insinuations regarding alleged "deletions" of source code are false, inflammatory, and highly misleading.

HID's correspondence alleges, for example, that █████████████████████████████████ ████████████████████████████████████████████████ In fact, the content of the allegedly "deleted" source code files has been, and remains, fully available for review in Vector Flow's source code production ██████████████████████████████████ to which your reviewers have had access from the beginning. The "deletions" to which HID's letters refer indicate only that █████████████████ ███████████████████ not that the code content itself was deleted from the repository. Indeed, as you should be aware, the purpose of a git repository is to maintain version control over a codebase and memorialize the changes that are made, which routinely involve "deletions" as code is revised and updated, much like a redline which shows the deletions in "show all" mode but does not show them in "show final" mode. We suggest that you revisit this point with your source code reviewer, who is scheduled to be onsite reviewing the code for at least three days this week.

For these reasons, HID's unsupported accusations—raised in your August 29th and September 12th letters and repeated again during the parties' meet and confer—that Vector Flow has not properly preserved



By Email
Natalie A. Bennett
September 28, 2022
Page Two

relevant information is unfounded and not well taken. We also take exceptions to your meritless suggestion, stated during the parties' meet and confer, that updates to the codebase in the ordinary course of business, all of which are reflected in git, are in any way "suspicious."

Similarly, with respect to allegedly "missing source code repositories" relating to Innominds, HID has not shown that anything is "missing."  Vector Flow has produced all of the source code for Accused Product software as of July 2022 that is in its possession, custody, or control.

      **b.**   █  **Tickets and Former HID Employees**

HID has requested that Vector Flow produce "the complete source code ticket repositories" for Vector Flow's accused software, but HID has failed to show that any tickets are reasonably relevant to the issues in this case.  *See* August 29, 2022 letter from HID.  For example, although HID alleges in its correspondence that the █ tickets *might* provide additional context as to various exemplary commits in the Vector Flow codebase, HID has tellingly refused to even represent—let alone show—that the implicated code contains or reflects HID's trade secret information, or else relates in any way to HID's patent claims.  HID's unsupported proclamation that █ tickets are "relevant" does not make them so.

Nevertheless, and contrary to the representations in your September 12, 2022 letter, Vector Flow has not "refus[ed] to produce its source code ticket repositories." Rather, as previously set forth in Defendants' September 2, 2022 letter to HID and further explained during the parties' meet and confer, HID's demand that Vector Flow produce wholesale the *entirety* of its largely irrelevant █ ticket repository is unsubstantiated, unduly burdensome, and not proportional to the needs of the case—particularly in view of HID's failure to identify even a single line of the Vector Flow source code that allegedly contains, reflects, or resulted from the alleged misappropriation of HID's trade secret information.  By HID's own assertion, there would be ████████████████████████████ which would require an unduly burdensome and costly effort to collect, review, and produce, without any showing of reasonable relevance to any issue.

Notwithstanding HID's discovery deficiencies, Vector Flow would be willing to produce a targeted set of █ tickets that are shown to be reasonably relevant to the issues in this case, provided that: (1) HID narrow its request to specific tickets or source code modules that it shows to be reasonably relevant to its claims, and (2) HID commit to producing source code ticket information (whether in █ or an equivalent system) for the HID SAFE source code on equal terms.  For example, if HID were able to demonstrate that a certain module of HID's SAFE source code were contained within Vector Flow's source code (which is not the case), then █ tickets regarding the addition of that module to Vector Flow's source would be reasonably discoverable to the extent they existed.

Vector Flow's proposal is eminently reasonable, and resolves both HID's desire for additional context about specific commits in the Vector Flow codebase (to the extent HID identifies any commits that are actually relevant to its claims), as well as Vector Flow's concern regarding the substantial burden of exporting and reviewing every single source code ticket since the inception of the company, the vast majority of which are indisputably irrelevant to the claims at issue in this litigation.

We note that despite demanding further document productions from Vector Flow, HID has not produced any documents at all outside of its native source code.  If HID is insisting that all █ tickets must be produced, please confirm in writing by no later than October 7, 2022 whether HID will be producing the entire source code ticket repositories for the HID SAFE codebase that practices the patents.



By Email
Natalie A. Bennett
September 28, 2022
Page Three

Similar points apply to HID's blanket request for unfettered discovery into certain individuals who purportedly authored Vector Flow source code. As an initial matter, it is unclear what exactly HID is requesting with respect to these individuals above and beyond what Vector Flow has already indicated it will produce. For example, Vector Flow stated during the parties' meet and confer that it is continuing to collect and review documentation for the Vector Flow product responsive to HID's RFP No. 1, and will produce such material on a rolling basis.

If HID could point to a specific portion of Vector Flow source code authored by one of these individuals that contains HID SAFE source code (which is not the case), then reasonably targeted further discovery would be warranted. Absent any initial showing of relevance, however, HID's overbroad requests amount to a baseless and unduly burdensome fishing expedition. Nevertheless, if HID would like to identify any one or more of these individuals to replace others among the limited set of custodians for whom ESI will be searched according to the parties' mutual ESI protocol, please let us know, and please also confirm that HID will be producing the documents in its possession relating to each of these former HID employees as a condition precedent to any production by Vector Flow.

      c.  **Operational Software**

Vector Flow remains willing to discuss the parties respectively making available operational software. So that we can evaluate this item, please confirm that HID is willing to make available operational software for all versions of HID SAFE, which is relevant both to HID's trade secret and patent claims. Once we have that confirmation, we will be willing to discuss this item further with you at a mutually agreeable time.

    **II.**    <u>**Defendants' Pending Discovery Requests to HID**</u>

      a.  **Supplementation of HID Discovery**

We appreciate your confirmation that HID will supplement within 10 days its responses to Defendants' Interrogatories Nos. 4, 7, and 11, as well as Defendants' Requests for Production Nos. 21 and 36. We also appreciate your confirmation that HID will collect and produce access logs from October 2020 onward.

      b.  **Review of HID SAFE Source Code**

While we appreciate HID making versions 3, 4, and 5 of the HID SAFE source code available for inspection, we are confounded by HID's inability to explain its failure to locate prior versions of the code, including versions 1 and 2. In its court filings, discovery responses, and correspondence with Defendants, HID has repeatedly and consistently insisted that the "*entire*" source code for the HID SAFE product constitutes its protected trade secret information. These assertions, however, are directly refuted by HID having seemingly and inexplicably lost *two complete revisions* to its "protected" source code. Please confirm in writing by no later than October 7, 2022 whether HID will be making all prior versions of the HID SAFE source code, including versions 1 and 2, available for inspection. If HID is unable to do so, please explain in writing by no later than October 7, 2022 why that is the case.

Equally confounding is HID's repeated refusal to confirm that the HID SAFE source code made available for inspection comprises all of the trade secrets that were allegedly misappropriated by Defendants. This discovery goes to the heart of HID's trade secret claims, and HID's inability or unwillingness to confirm such baseline information is highly prejudicial to Defendants. Please confirm in writing by no later than October 7, 2022 whether the HID SAFE source code made available for inspection comprises all of the trade secrets



By Email
Natalie A. Bennett
September 28, 2022
Page Four

that were allegedly misappropriated by Defendants. If HID is unable or unwilling to so indicate, please explain in writing by no later than October 7, 2022 your reasons for refusing to do so.

### c.   Defendants' Trade Secret Interrogatories to HID

Defendants' outstanding trade secret interrogatories to HID (e.g., Interrogatories Nos. 1, 12, 14, and 15) seek not only an explanation of the "specific means by which the misappropriation of the HID SAFE source code occurred," but an identification of *what*, if anything, was allegedly misappropriated. HID's indication that its investigation is ongoing does not excuse its failure thus far to identify *any* portion of the Vector Flow source code as containing, reflecting, or resulting from alleged misappropriation, particularly after HID's experts have spent 150+ hours reviewing Vector Flow's code.

HID is correct that the Court has allowed discovery to proceed in this matter, but discovery is not a one-way street.  Vector Flow produced its entire source code repository, which would reflect any alleged trade secret misappropriation if any such misappropriation had actually occurred, since HID has said the code is its trade secret.  Having spent hundreds of hours reviewing Vector Flow's code over the course of multiple months, HID must now also abide by its obligations to substantively respond to Vector Flow's interrogatories. The Court's order permitting discovery to proceed does not somehow permit HID to refuse to substantively answer Vector Flow's interrogatories until HID is satisfied that its investigation is complete. Furthermore, HID's suggestion that it requires unfettered discovery into *non-source code evidence* before it can substantively respond to Vector Flow's trade secret interrogatories is not only unfounded under the Federal Rules, but also particularly confusing given that HID has repeatedly pointed to *currently implemented features* of the Vector Flow product as allegedly evidencing the misappropriation of HID's trade secrets. (*See, e.g.,* HID's Resp. to Def's Rog. 15; Compl., ¶¶35-50.)  HID has had access to the code underlying those features for months, yet notably has refused to state whether any of that code actually evidences the misappropriation that HID has alleged. As such, please promptly supplement your responses or drop your allegations.

Sincerely,

  /s/ David N. Murdter

David N. Murdter

# EXHIBIT J



██████████████████████████████████

David N. Murdter
T: +1 650 843 5881
dmurdter@cooley.com

October 5, 2022

By Email

Natalie A. Bennett
+1 202 739 5559
Natalie.bennett@morganlewis.com
1111 Pennsylvania Ave., NW
Washington, D.C. 20004

Counsel,

We write to provide additional information in response to certain issues raised in your August 29th and September 12th letters, as well as during the parties' meet and confer discussions on September 19th and September 30th. This additional information only further highlights how HID is engaging in a baseless fishing expedition and raising unfounded accusations that are not well-taken.

First, we confirm once again that Vector Flow has produced all source code for the accused products as of July 2022 that is in its possession, custody, or control. Vector Flow does not possess any earlier "versions" or "drafts" of the 478 source code files that were committed on May 15, 2019 ████████████████. As discussed in our meet and confer call, the content of those 478 files has been fully available for HID's review, and HID has failed to show that any content within the files is relevant to HID's claims. As such, HID has not established the relevance of these files in the first instance, let alone the need for any prior versions or drafts. Nevertheless, we have investigated further and provide the following additional information.

Those files appear to have been generated using a publicly available form builder product called Form.io. (*See, e.g.,* https://www.form.io/ (Form.io website), https://www.form.io/opensource (Open Source license for the Form.io libraries), https://help.form.io/developers/form-builder (Overview of Form.io for developers).) The use of Form.io to generate these files is plainly reflected in the source code repository that HID's code reviewers have been extensively reviewing. For example, the code associated with the very commit cited in your correspondence ████████████████████████ as seen in the screenshot excerpts below:



██████████████████████████████████ Hence, it makes sense

Cooley LLP   3175 Hanover Street   Palo Alto, CA   94304-1130
t: +1 650 843 5000   f: +1 650 849 7400   cooley.com



By Email
Natalie A. Bennett
September 28, 2022
Page Two

that Vector Flow does not possess earlier versions or drafts of the files insofar as no earlier versions or drafts were maintained by Vector Flow at the time these files were quickly generated using the publicly available tool.

For similar reasons, we would not expect that Innominds likely possesses earlier versions or drafts of these files, either.

HID's source code reviewers can review the content of these files in the Vector Flow production and also separately investigate and review publicly available Form.io developer materials to confirm all of this information. Indeed, we asked during the parties' meet and confer if you had even considered whether these were open source files, and you indicated that you had not – a concerning revelation given your aggressive demands for the production of non-existent "prior versions" from Vector Flow.

Second, with respect to your request to share certain information with Innominds based on your review of Vector Flow's highly confidential source code (see 2022.09.23 J. Kritsas email to L. Mead and subsequent emails), we do not object to you sharing with Innominds' counsel that you seek information related to the 478 Form.io files that were committed on May 15, 2019, based on your representations to us during the parties' September 30, 2022 meet and confer that your communications with Innominds will not contain any actual Vector Flow source code, references to specific code or source code modules, or other highly sensitive information so designated under the protective order. In other words, we do not object to your request **only** to the extent you seek to discuss Innominds-authored source code in the abstract, at the level of generality presented in the draft letter you shared with us during the parties' meet and confer. Please confirm that HID will abide by this understanding before you communicate with Innominds' counsel.

Sincerely,

  /s/ David N. Murdter

David N. Murdter