IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1769 (GBW) |
| | ) | (CONSOLIDATED) |
| VECTOR FLOW, INC., | ) | |
| | ) | **REDACTED –** |
| Defendant. | ) | **PUBLIC VERSION** |

**PLAINTIFF HID GLOBAL CORPORATION'S LETTER TO THE HONORABLE
<u>GREGORY B. WILLIAMS REGARDING DISCOVERY DISPUTE</u>**

OF COUNSEL:

Scott D. Sherwin
Jason C. White
James J. Kritsas
Nicholas A. Restauri
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
(312) 324-1000

Calvin M. Brien
Natalie A. Bennett
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
(202) 739-3000

Michelle Pector
Veronica J. Lew
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
(713) 890-5000

Michael D. Weil
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
(415) 442-1000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Plaintiff HID Global Corporation*

**Original Filing Date: February 10, 2023**
**Redacted Filing Date: February 16, 2023**

**CONFIDENTIAL – FILED UNDER SEAL**

Dear Judge Williams:

Discovery in this case has been uniquely challenging due to Defendants' unwillingness to participate in the required exchange of documents. The Court has set **April 24, 2023** (D.I. 127, ¶ 4.b) as the deadline for substantial completion of document production, and yet Defendants have produced less than 200 documents to date (the majority of which are prior art) pursuant to HID's Requests for Production served almost a year ago in April 2022. *See* Ex. K (HID RFPs dated April 22, 2022). In seeking immediate relief relating to email discovery, HID requests that the Court **(1)** set upcoming deadlines in the near term to finalize the exchange of email discovery, and **(2)** resolve a discrete dispute regarding the date range for email collection for Vector Flow's three leading executives who are also named Defendants in their personal capacity.[1]

A. **Deadlines for Production of Email Discovery Need to be Set**

HID is gravely concerned that Defendants are "running out the clock" on the exchange of email discovery so as to prejudice HID's ability to adduce evidence and move this case towards trial in January 2024. As detailed in the declaration of Natalie A. Bennett ("Bennett Decl."), HID has been pursuing an enforceable set of "rules," or at least an agreed framework to exchange email, since September 2022. More than four and a half months later, the parties have agreed upon a set of custodians but currently lack an agreed protocol under which to implement the details of email production. The April 24 deadline to complete document production that is *less than three months away*. Any adjustment to the current case schedule would only reward Defendants for tactics of delay. However, with additional guidance from the Court, as requested herein, the parties should be able to complete all discovery tasks under the current case schedule.

The Court need not resolve the fine details of the governing email protocol. Instead, HID requests that the Court set dates certain for (1) a submission of a stipulated email protocol and (2) the exchange of all emails. Court-imposed deadlines will facilitate workable compromises without the threat of using the negotiation process to delay or engage in contentious meet and confer discussions. HID requests that the Court set **February 21, 2023** as the deadline for the parties to submit a revised stipulated set of procedures that will govern the production of email, including the specific procedures the parties have agreed to follow as well as an Appendix that identifies all email custodians and search terms. HID further requests that the Court set **February 28, 2023** as the deadline for the parties to produce all responsive email that do not raise privilege concerns (i.e., documents that do not hit on a privilege screen). HID requests the Court set **March 24, 2023** as the final deadline for the parties to produce any email that may have been previously withheld due to potential privilege concerns (i.e., documents that hit on a privileged screen but were determined, after further review, not to be privileged).

After traversing a series of disputes in the months leading up to this point, the parties are now familiar with the other side's positions on various aspects of a potential email protocol:

- Each side has expressed concerns regarding burden and costs relating to email discovery. After six weeks of attempting to navigate the details of a responsiveness review, on January

---

[1] There are other categories of evidence HID may need to compel, many of which have been the subject of multiple meet and confers. To avoid further disputes before the Court, HID requests any assistance that the Court can provide in requiring Defendants to expeditiously produce the technical and damages-related information HID is actively seeking.

**CONFIDENTIAL – FILED UNDER SEAL**

19, 2023 HID proposed that the parties pivot to a compromise whereby the parties would forego a responsiveness review and simply focus on negotiating broad search terms such that each side would produce non-privileged email discovery that "hit" on the broad search terms. Bennett Decl. ¶ 19 (discussing Ex. E).

- This compromise approach would necessarily result in a higher number of emails being exchanged. However, it would also be expeditious and would eliminate concerns that HID has that a responsiveness review could evolve into a narrowing "relevancy review" such that Defendants could withhold documents that counsel did not deem to be relevant even if such documents hit on the agreed search terms, and would further delay production. This compromise approach of producing all non-privileged email "hits" was the outcome of the parties' negotiations between January 19, 2023 and January 30, 2023. Bennett Decl. ¶ 21 (discussing Ex. F).

- A message between counsel dated January 27, 2023, Exhibit F, memorializes a nearly agreed set of terms that could be utilized as the starting point to resume and complete further negotiations regarding a stipulated email protocol. Bennett Decl. ¶ 21 (discussing Ex. F). Notwithstanding that there do not appear to be any live disputes except for the date range discussed below, Defendants have maintained the position that any live dispute can and will derail negotiations as to the protocol in its entirety. Ex. F ("If one aspect is rejected, then we do not have agreement on any aspect."). The parties should move forward on the nearly agreed set of terms with a focus on completing this exercise without looming threats of a veto.

After the Court sets deadlines and resolves the disputed date range for email of the Individual Defendants (below), the parties should be positioned to quickly resume discussions and memorialize a framework that provides for the immediate exchange of email discovery.

### B. Production of Personal Email for the Individual Defendants Should Date Back to the HID Merger in February 2015

The parties' only meaningful dispute identified in the January 27, 2023 correspondence, Ex. F, is whether email discovery for the personal emails of Ajay Jain, Vikrant Ghai, and Shailendra Sharma (collectively, "Individual Defendants") should begin in February 2015 when the Individual Defendants became HID employees following a merger between HID and Quantum Secure.[2] Ex. G (correspondence dated February 2, 2023 regarding the "impasse" regarding the date range for the email of the Individual Defendants). Importantly, Defendants have already conceded that the personal email for the Individual Defendants is relevant and within Defendants' possession because counsel has indicated that *the Individual Defendants' personal email has already been gathered for use in this case*. The dispute is limited to the appropriate date range.

HID seeks the personal emails of the Individual Defendants from the time of their employment with HID to advance claims against the Individual Defendants in their individual capacities for breach of non-compete and/or non-solicitation obligations as well as breach of fiduciary duties to HID. *See* D.I. 113 at ¶¶ 51-55, 160-172 (detailing HID's breach of contract claims); *id.* at ¶¶ 67-73, 86-98, 173-187 (detailing HID's breach of fiduciary duty claims). HID is entitled to confirm or refute current suspicions that the Individual Defendants were communicating with each other, other employees, and possibly customers in violation of their non-compete and non-solicitation

---

[2] The Merger facts are chronicled in HID's dispositive motion on Assignor Estoppel (D.I. 143).

agreements while they were employed at HID and prior to establishing Vector Flow in 2019. The relevant known facts are attached as a timeline in Exhibit I – although additional facts are likely to be uncovered. HID is particularly concerned about a potential scheme led by Mr. Ghai whereby he would enter into agreements with customers on behalf of HID that ███████████████████████████████████████████████████████████████████████████████████████████. These cancellation provisions may have been entered into by Mr. Ghai because the Individual Defendants were already planning to leave HID, launch Vector Flow towards the end of the non-compete period, and the "███████████████████████████████" provisions would then allow the Individual Defendants to immediately pursue HID's client base.

HID should be permitted to take discovery from 2015 onward as to, among other things, the motivations for negotiating HID customer agreements that were ███████████████████████ ████████. For example, and as summarized in Exhibit J (a summary generated during a prior arbitration between HID and the Individual Defendants relating to the amount of earnout proceeds), Mr. Ghai entered into an Agreement with ████████████ in 2016 that permitted █████████████████████████████████████████████████████████████. Ex. J at 1. Similarly, in 2017, the Individual Defendants stopped requiring customers to make any commitment to HID at all. An agreement with █████ provides that the customer "████ ██████████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████" Ex. J at 3.

These "███████████████████████████" provisions are highly unusual given that HID's business model is to ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████████████. HID is entitled to discover whether the Individual Defendants were working at cross-purposes with HID while employees and whether the Individual Defendants' forward-looking plan to compete with HID harmed HID's market position. Notably, HID contends that at least some of Vector Flow's current customers such as █████ and █████ were formerly HID customers who were able to terminate under the cancellation provisions negotiated by Mr. Ghai while he was at HID. Any such evidence would be immediately relevant to HID's claims against the Individual Defendants and may also unveil details as to Vector Flow's early product plans or efforts to misuse source code that were being discussed prior to 2018 in the time frame immediately before the Individual Defendants began soliciting private equity firms for capital contributions. *See* Ex. I.

Accordingly, HID requests that the Court enforce the Individual Defendants' broad discovery obligations under FRCP 26 and 34. There is no undue burden because the personal emails have already been collected. *See Carnegie Mellon Univ. v. Marvell Techs. Grp. Ltd.*, No. 09-cv-290, 2010 WL 4338388, at *1 (W.D. Penn. Oct. 27, 2010) (finding that the email of "high ranking" executives is "subject to testing by the requesting party") (internal citations omitted). Indeed, "[i]f responsive emails kept on the officers' and founders' personal email accounts are not subject to a Rule 34 notice to produce, it would be tantamount to an invitation for executives to keep an email equivalent of two sets of correspondence, one discoverable and the other not – a recipe for deceit." *CA, Inc. v. AppDynamics, Inc.*, No. 13-cv-2111, 2014 WL 12860591, at *4 (S.D.N.Y. Sept. 8, 2014). Thus, HID requests the Court order that the Individual Defendants' personal emails are subject to discovery from February 10, 2015 (the day after the Merger Agreement) onward given the nature of the claims against these custodians in their personal capacity.

**CONFIDENTIAL – FILED UNDER SEAL**

       Respectfully,

       */s/ Jennifer Ying*

       Jennifer Ying (#5550)

JY/lo
Attachments
cc: Clerk of the Court (via hand delivery)
   All Counsel of Record (via CM/ECF and e-mail)

4