IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1769 (GBW) |
| | ) | (CONSOLIDATED) |
| | ) | |
| VECTOR FLOW, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM ORDER</u>**

The Court entered an Order assigning me to serve as a special master to hear and decide

discovery disputes in this litigation.  (D.I. 191).  Pending before me is Plaintiff HID Global

Corp.'s ("HID") request for an inspection of Defendant Vector Flow, Inc.'s ("Vector Flow") Jira

database.

I.      **Background**

This issue is not a new issue.  In fact, this is the third, if not, the fourth time, the issue of

the "Jira" production has been raised.[1]  On October 11, 2022, the parties requested a discovery

teleconference concerning, among other issues, "Plaintiff's requests for production of relevant

source code ticket repositories, including 'Jira' tickets." (D.I. 83).  Each side presented letter

briefing in connection with that dispute.  (D.I. 91, 92).  At that time, HID was requesting the

production of the Jira information.  No specific format of production was requested.  HID

discussed an inspection but HID also indicated that its own production of its Jira data was "easily

---

[1] I include the details of the procedural history for the benefit of the parties and the Court.  My
decision, in part, rests on the extensive litigation that has taken place on this issue and the many
court rulings that have already been made.

exported" into a spreadsheet format[2]. (D.I. 91 at 2).  Vector Flow opposed on the grounds that

there was no showing that the tickets were relevant and therefore the burden outweighed the

benefit to produce all tickets.  (D.I. 92 at 2).  It further asked that if the Court were to order

production that HID be required to "reasonably narrow[] its request to properly tailored portions

of the Vector Flow source code that HID shows to be relevant to its claims."  (*Id.*).  The Court

held a discovery teleconference on October 28, 2022 (D.I. 97) and ordered that Vector Flow

produce "all of its Jira tickets that are relevant to the claims asserted in this action and . . . add an

appropriate date range to discovery tickets relevant and proportional [*sic*] to the needs of the

case."  (D.I. 97 at 4:22-5:3).  After further discussion on the record, the Court limited the date

range to 2018 through the present. (D.I. 97 at 5:20-22).

      Following that conference, the parties met and conferred several times on the scope of the

production.  Vector Flow stated that it would produce any tickets that HID identified during its

review of the source code.  HID identified 80 total tickets at that time.  (*Id.* at 2).  HID did not

believe this to be sufficient and requested that Vector Flow produce the Jira tickets containing

certain prefixes and individuals associated with the source code development be produced.  (*Id.*

at 2 and Ex. 2).

      The parties requested a second discovery dispute teleconference on the "Jira" tickets

issue on December 13, 2022. (D.I. 121).  The following day, December 14, 2022, the parties

appeared before the Court for a scheduling conference.  During this teleconference, the Court

acknowledged receipt of the request for a discovery conference concerning the Jira tickets.  The

Court recognized that this topic had been previously addressed by the Court on October 28,

---

[2] HID produced information from "nearly 70,000 of its own Jira tickets" in a .csv (viewable in
Excel) spreadsheet.  (D.I. 122 at 3).  HID acknowledges that this Excel format can be "screened
for privilege, produced, and efficiently searched by the receiving party."  (*Id.*).

2022, where the Court ordered Vector Flow to produce all of its Jira tickets.  (D.I.   at 7:14-25).

Responding to the Court's question about the resurging issue, HID stated that the parties

disputed the scope of the production ordered.  (*Id.* at 8:3-11).  The Court agreed to revisit the

previous transcript and hold another discovery conference but reiterated that the Court believed it

had "set some parameters . . . to narrow it . . ." and thought "that resolved it."  (*Id.* at 9:3-11).

 Each side again submitted letter briefing from in connection with this dispute.  (D.I. 122,

123).  In that request, HID asked the Court to require Vector Flow to produce all Jira tickets

associated with the ticket prefixes and individuals that are "relevant and proportional to HID's

trade secret misappropriation claims."  (D.I. 122 at 1).  The facts surrounding this dispute arose

during HID's review of source code which they allege "indicate[d] that Defendants used Jira

tickets as step-by-step instructions for the misappropriation."  (*Id*).  In its December letter, HID

requested an order to compel Vector Flow to produce Jira tickets and any associated attachments

from 2018 to the present that: (1) have the prefixes: "VS," "PIAM," "VF," or "PF," and (2) are

associated with 21 identified individuals.  (*Id.* at 2).  This request also asked for an inspection as

alternative relief to the production of the information.  (D.I. 122 at 3).  Vector Flow objected to

this request on the grounds that it was a "fishing expedition" based on unsupported allegations.

Vector Flow argued that the 2018 timeframe was too early because it occurred before Vector

Flow began developing the code in mid-2019.  (D.I. 123 at 1).  It further argued that the

requested search was not tailored or narrowed as ordered by the Court because the requested

tickets are not relevant to the claims or proportional to the needs of the case.  (*Id.* at 2).  Vector

Flow also objected to any inspection based on the same grounds.  (*Id.* at 3).

 The Court held argument on this issue on December 20, 2022.  (D.I. 142).  Again, the

Court recognized this issue had been heard before and said "I thought I had ruled on the matter. I

reviewed the transcript and saw that I did . . ." (*Id.* at 5:2-5).  The Court stated that it had limited the timeframe of the search to 2018 to the present and noted that "there was no objection to that at that time." (*Id.* at 5:9-10).  The Court rejected Vector Flow's argument that any production should be limited to those tickets that are identified by HID because this case is about the potential misappropriation of HID's source code, and Jira tickets that document creation of the accused source code is relevant to the claims in this case. (*Id.* at 13:6-13).  The Court agreed that HID's proposal to search 21 individuals and the identified prefixes was reasonable and granted HID's request for production. (*Id.* at 13:11-23).

At that point, the issue appeared decided, and production was ordered to occur in 30 days.  Then on February 13, 2023, HID submitted an "urgent" letter seeking emergency relief related to the Jira ticket issue.  (D.I. 163).  This letter asked the Court in part to allow HID to conduct a direct inspection of Vector Flow's "live Jira system" to address its concerns of spoliation. (*Id.*).  Vector Flow requested the Court strike HID's letter, or in the alternative, provide an opportunity to complete its investigation as to the issues raised and provide a response to the Court.  (D.I. 165).  The Court quickly issued an oral order on February 16, 2023 ordering the parties to meet and confer by video or in person by February 24, 2023 and then identify any outstanding issues.  It further ordered that HID's request for emergency relief regarding the direct inspection was denied without prejudice to renew following the meet and confer process.  (D.I. 167 (Oral Order)).

The parties certified the meet and confer (which lasted "approximately 53 minutes") the and told the Court that they were continuing to attempt to reach a resolution.  (D.I. 172).

The day prior to the Markman hearing, HID wrote a letter to the Court requesting time at the end of the hearing to discuss "the status of the parties' discussions" concerning HID's request

for an inspection of the Jira platform.  (D.I. 175).  At the hearing, the Court again recognized that it had already "some time ago, compelled the production of these tickets."  (Markman Tr. at 127:16-17 (March 7, 2023)).  HID, however, stated that the disputes now address the need for the attachments to the tickets and the inspection.  (*Id.* at 127:18-128:18).  Vector Flow responded briefly at the conference to say that they were still considering HID's request and had asked HID for some additional information to see if they could rectify the issues with the production.  (*Id.* at 129:7-130:1-8).  At that point, recognizing that this was "at least the third time" the Court had dealt with this matter, he stated that he may appoint a discovery master after looking at the submissions.  (*Id.* at 130:10-16).

The parties again submitted letter submissions on this issue, this time with attached expert declarations, and a declaration from a Ms. Srikanthaiah[3].  (D.I. 176, 178).  Vector Flow's letter brief lays forth allegations that Vector Flow was deleting and modifying information in its database and therefore only an inspection will provide what it needs to support its claims.  (D.I. 176).  HID further argued that the information produced does not allow it to view why tickets were deleted or merged.  HID's expert, Ms. Lu, submitted a declaration stating that an inspection is the only way to see the complete system audit log and comment and history tabs available for the tickets (including details of any deletion) and that this information cannot be exported.  (*Id*. at 2, Ex. E (Lu Dec.)). Vector Flow's response argued that HID did not address the "specific need and good cause" standard required by the parties' agreed-upon ESI order and submitted its own expert declaration rebutting Ms. Lu's statements that all the information that cannot be exported

---

[3] HID refers to Ms. Srikantaiah as a "witness", however, the Court understands the only testimony Ms. Srikantaih provided was that in the declaration submitted as an exhibit to HID's March 14 letter.  The Court further understands from Vector Flow's letter response and discussions with the parties that HID's letter brief was the first time Vector Flow became aware of this testimony.  (D.I. 178 at 2).

directly through Jira can, in fact, be exported through a third-party plug-in called REST API. Vector Flow's expert provided specific citations to the Atlassian website to support his conclusions. (D.I. 180). Vector Flow agreed to export the requested data and stated that it is already producing attachments to the identified tickets. (D.I. 178 at 1). Moreover, Vector Flow agreed to produce via export of the data all change logs, audit logs, and history tabs. (*Id.* at 3-4). Vector Flow's expert further stated that changes made to any comments in the Jira system are not available either in the "live" system, nor can they be exported in any way. This is a limitation of the Jira software itself. (*Id.* at 4).

Following a review of the parties' submissions and referencing the frequency in which the parties have requested a discovery conference "on substantially similar issues," the Court appointed a special master on March 30, 2023, to handle this dispute and all future discovery disputes. (D.I. 189 (Oral Order), 190 (Order Referring Case), 191 (Order Appointing Special Master Karen E. Keller, Esq.)).

I held a teleconference with the parties on April 19, 2023, to get an update on what issues are still pending and what progress the parties have made to try and reach an amicable resolution to the Jira issue. At that conference, and in follow-up correspondence with the parties, I ordered them to each submit a three-page letter answering the questions:

> (1) Why defendants' proposed inspection parameters are inadequate and what would plaintiff require to accept the proposal?
>
> (2) Defendants state in their letter response that all of the data requested by plaintiff is exportable (contrary to the statements in Ms. Lu's declaration). Please respond to these technical arguments and specifically, I would like to know whether Ms. Lu agrees with Mr. Thompson that using the software he describes in his declaration and in defendants' letter brief that plaintiff could review all the information that they are seeking.

I have reviewed and considered all the letter briefs and various declarations related to the Jira ticket issue, as well as the Court transcripts and oral orders on the same.  I heard arguments from the parties at a video conference on April 18, 2023. I took the matter under advisement and agreed to issue a decision promptly.

## II.      Standard of Review

Rule 26 provides that parties may obtain discovery on nonprivileged information that is *relevant* to any party's claim or defense and proportional to the needs of the case while considering the burden and the expense on the producing party.  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Federal Rule of Civil Procedure 34 provides the procedures through which a party must produce electronically stored information ("ESI").  Fed. R. Civ. P. 34.  Rule 34 only requires that the information be produced "in a form [] in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).  The 2006 commentary to Rule 34 notes that it is "not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances."  Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.  "Courts should guard against undue intrusiveness resulting from inspecting . . . such systems."  *Id.*

In the instant case, the parties entered into an ESI stipulation and order that addresses the inspection of software. This ESI order was signed and entered by the Court.  (D.I. 52).  The Order specifically states that an on-site inspection of electronic media "shall not be permitted absent a demonstration by the requesting party of *specific need and good cause*."  (*Id.* at ¶ 4(a)) (emphasis added).

### III.    Discussion

HID is requesting an order requiring Vector Flow to allow an inspection of its live Jira software system.  This is not a new request.  Beginning with the first discovery dispute brought to the Court on the Jira production in October 2023, HID has continued to mention by the possibility of an inspection as a remedy. Moreover, in all of its briefing on this issue, HID provides some argument that the inspection is needed because of some alleged spoliation or suspicious behavior by Vector Flow or its counsel.  In none of the Court's multiple rulings on this issue did it mention or order an inspection despite this request being in front of it.  *See supra.* The Court did, however, order Vector Flow to produce its Jira tickets and attachments from 2018 forward from specific prefixes and certain individuals.  *See supra.*

The Court found, and I agree, that the Jira discovery, including the tickets and attachments, is relevant to HID's claims in this case.  (D.I. 142 at 13:6-13).  HID has provided sufficient information in its most recent supplemental interrogatory responses to tie the relevancy of this information to their allegations and contentions concerning trade secret misappropriation, breach of fiduciary duty, breach of contract, and others.[4]  The parties seem to agree that the Jira ticket information could provide information such as: authors, recipients, comments to code, changes to code and reasons for such, dates as to when changes were made, historical information on the code, and audit information on the code.  Such information could inform the who, what, when and why of HID's trade secret claims.

The commentary to Rule 34 notes that "[c]ourts should guard against undue intrusiveness due to inspection."  Fed. R. Civ. P. 34(a) advisory committee's note to 2006

---

[4] I do not make any comment on the sufficiency of the contentions for any other purpose than the limited Jira issue before me.

8

amendment.  This is particularly true where the parties have agreed that an inspection shall not be permitted absent the requesting party demonstrating "specific need and good cause."  (D.I. 52).  Moreover, the Court, when presented with an opportunity to order an inspection earlier in this case, and even where HID directed the Court's attention to potential spoliation issues or missing information, declined to order an inspection.

HID concedes that the Jira ticket information is "easily exported into spreadsheet format from the underlying repository" and that these spreadsheet files "can be screened for privilege, produced and efficiently searched by the receiving party."  (D.I. 91 at 2; D.I. 122 at 3).  In fact, not only did HID produce its *own* Jira tickets in this format, but it has already reviewed the ticket information that has been produced by Vector Flow and aside from its complaints about the sufficiency of the production, did not argue that it was unable to review the information.  HID's only concern is the allegedly missing information or documents and therefore that the only way to obtain this missing or deleted information is through a direct inspection.  (*See* D.I. 176 and Ex. E (Lu Decl.)).  Vector Flow counters with its own expert, Mr. Thompson, who states that all information sought by HID can in fact be exported from the Jira system using the REST API third-party plug-in.  (D.I. 180 and Def. Responsive Letter to S.M. Keller in Opposition to Plaintiff's Apr. 13, 2023 Letter at 2-3).  Unlike HID's letter briefing and declarations, Vector Flow's expert, Mr. Thompson, provided specific citations to the Atlassian website (which the Special Master has accessed and reviewed) that support Vector Flow's argument that such data can be exported in a usable format.  (*See* Def. Responsive Letter to S.M. Keller in Opposition to Plaintiff's Apr. 13, 2023 Letter at 2-3; D.I. 180).  When questioned on this point at argument, HID could point to nothing other than Ms. Lu's say-so.  There does not seem to be a dispute that even an inspection will not provide access to any information that the

9

Jira software does not maintain in its ordinary course (for example, edits or deletions of comments).

Given the Court's previous rulings and HID's failure to show good cause and a specific need for the inspection where the ordered discovery is exportable in a readable, usable format.  Therefore, the Special Master orders that Vector Flow produce all Jira tickets that:  (1) have the prefixes: "VS," "PIAM," "VF," or "PF," and (2) are associated with the 21 identified individuals (and previously ordered by the Court to be produced) in an exportable format with all attachments and metadata related to those tickets that would allow HID to determine the who, what when and why (to the extent it exists).  Such production must allow the receiving party to easily correlate the attachments to their related tickets.  Vector Flow must also produce all change logs, comments, system audit logs, and custom fields related to the Jira tickets returned by the framework above.  Such production shall be subject to the Quick Peek agreement entered into between the parties.  (D.I. 186).  Upon reviewing the exported data, should problems arise, or HID uncover disconcerting information that is not explained by the export, it should meet and confer with Vector Flow in the first instance, provide an opportunity for Vector Flow to investigate and rectify if possible, and only then, if necessary, reach out to me for assistance in resolving any issues.  Given the upcoming deadlines in the case schedule and my desire to keep the case on track, Vector Flow shall complete this production by April 30, 2023.

Dated: April 19, 2023              */s/ Karen E. Keller, Esq.*
                                   Special Master Karen E. Keller, Esq.